UNITED PACIFIC INS. CO. v. OHIO CASUALTY INS. CO. et al.

No. 11799.

United States Court of Appeals
Ninth Circuit.

Feb. 11, 1949.

838

Harry E. Sackett, of Los Angeles, Cal., and Raymond G. Brown, of Portland, Or., and Frank J. Creede, of San Francisco, Cal., for appellant.

Harry D. Parker, Richard E. Reese, and Raymond G. Stanbury, all of Los Angeles, Cal., for appellee Ohio Casualty Ins. Co.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

On January 16, 1946, one Floyd Gilbert (named as appellee) was an agent, servant and employee of R. H. McKeon and George B. Page, a California partnership doing business as (dba) "Pacific Laundry and Dry Cleaners," hereafter called Pacific.

On the said date Gilbert was driving a truck for and on the business of Pacific, and while so engaged negligently caused physical injuries and property damage to Echols and his son (named as appellees). The parties to this appeal concede the negligence of Gilbert and his personal liability therefor is not questioned.

On the said date George B. Page, above mentioned, was also the owner of, and doing business as (dba) "Mission Linen and Towel Supply Company," hereafter called Mission. This concern was a California enterprise.[1]

Echols and son brought an action in a California state court to recover damages for injuries to person and property sustained by reason of the negligence of Gilbert. In that state action they named as defendants Pacific, Mission and Gilbert. Gilbert was not in California and service of process upon him could not be made. (It also appears that he was in Nebraska when the instant suit was begun and he was not served with process therein.)

In the instant case neither Page individually nor Mission, nor McKeon and Page dba Pacific, nor Floyd Gilbert answered or otherwise pleaded. Claimants Echols and son filed an answer claiming compensation from one or both of the insurance companies and praying for general relief. By reason of this posture of the case the sole issue confronting us on this appeal narrows to the controversy between appellee, "The Ohio Casualty Insurance Company," a corporation, (hereafter called Ohio) and appellant, "United Pacific Insurance Company," a corporation (hereafter called United).

R. H. McKeon, George B. Page, Robert Echols and Beverly Echols are natural citizens of the State of California. Ohio is a citizen of the State of Ohio. United is a citizen of the State of Washington. At all times here material both of these insurance companies were duly licensed by the State of California to engage in the general business of insuring persons in that State against liability imposed upon them as a result of automobile accidents. Diversity of citizenship is present and the amount in controversy exceeds $3,000 exclusive of interest and costs.

The issue presented concerns the nature and extent of the liabilities, inter se, of the two above named insurance companies under two certain policies of automobile liability insurance issued by them. The policy issued by Ohio covered Pacific, the other

[1] The record discloses that at all times material to this case, George B. Page was also interested in and conducting various business enterprises in California communities sometimes as an individual and sometimes in a partnership relation. While operating Mission as his individually-owned business, he was a partner of McKeon in Pacific, a separate business conducted wholly apart from Mission.

policy issued by United covered Mission. Both policies were in force and effect at all times material to this case,[2] and while both policies were issued on what is known in the insurance business as a comprehensive liability form, they differ insofar as extended coverage—insurance to persons other than owners or named assureds—is concerned.

The United policy covering Mission and George B. Page named as assured therein "George B. Page, individually and doing business as (dba) Mission." (The policy covered certain other outside business and partnership activities of Page not material to this case.) As drawn, the policy admittedly covered a certain truck owned by and registered in the name of Page. About a year prior to the Echols' accident Page had leased or rented this truck to Pacific to be used by Pacific in its business operations. It is agreed that Gilbert was driving this truck on the business of Pacific when his negligence caused the Echols' accident.

With reference to the Echols' accident, United concedes that its policy issued to and covering Mission also insured Gilbert personally under its "extended coverage." The parties agree that the truck so being used by Pacific was used with the *permission* of Page, its owner.[3]

The "named assured" in the Ohio policy covering Pacific were "R. H. McKeon and George B. Page, doing business as (dba) Pacific." (The policy covered other operations not material to the issue here.) Certain provisions of this policy will be referred to later.

The pendency of the Echols' suit led to a controversy between United and Ohio and terminated in this suit. As indicated above it concerned the nature and extent of the liability of each (in the Echols' matter) to the assured named in the above noted policies of liability insurance. The real issue between them which caused the controversy was whether the Ohio policy insuring Pacific also extended to and provided personal insurance for Gilbert, the employee of Pacific who was negligent while driving a truck owned by Page.

The appeal in this case is from the declaratory judgment entered in an action brought by United against Ohio and the other named appellees to settle this controversy. United, as plaintiff, prayed for a declaratory judgment that its policy of automobile liability and property damage insurance sold to and covering Mission does not apply to and cover the Echols' accident; also that the policy issued by Ohio be declared to apply to and cover said accident to the exclusion of the insurance afforded by United. The prayer was also for such other relief, both general and special, as to the court seemed just and proper.

---

2 During the trial of this case, these two insurance company litigants advised the court that they had compromised and settled the Echols' action by the payment of $10,250, each insurance company paying one-half of said sum. This settlement appears to have been made by reason of a conceded joint-liability to the named insured under the two policies, the amount so paid by each company being under the limit of liability fixed in its policy.

The limits of liability under United's policy are $10,000 for injury to or death of one person and, subject to that limit for each person, $25,000 for any one occurrence. The limits of liability under Ohio's policy are $25,000 for injury or death of one person and, subject to that limit for one person, $50,000 for any one accident. Each covered property damage to the extent of $5,000.

3 United contends that it also has liability under and by reason of Section 402 of the California Motor Vehicle Code which makes the owner of a motor vehicle (Page) liable for the death of or injury to person or property if resulting from the negligence of the operator of the vehicle if it is being used (as here) with the permission of the owner, the negligence of the operator being imputed to the owner by this statute. The special statutory liability thus created is limited to $5,000 for death or injury of one person and $10,000 with respect to the death of or injury to more than one person. Property damage liability is limited to $1,000. By this statute the owner of the vehicle is subrogated to all of the rights of the injured person and he may recover from the negligent operator the amount of the judgment and costs recovered against him. The injured party is required to join the negligent operator in a suit against the owner and make personal service upon the operator if he is in the State of California. Recourse must first be had against the property of the operator so served.

In its answer Ohio prayed that the court deny the relief sought by United; that it declare that United's policy does apply to and cover said accident and that Ohio's policy does not apply and cover the accident; also that *any liability* arising from the accident on the part of Pacific, named as assured in Ohio's policy, does not (in any event) apply to said accident until, and only until *after* the limits of United's policy are reached. Ohio further prayed that United be required to defend (and to pay any judgment recovered in) the then pending Echols' action in the state court. Ohio also prayed for general and specific relief. The scope of the relief it sought is further indicated by our later comments on its position at trial and on this appeal.

As we view the record, the pleadings in this action reveal a clearly expressed desire on the part of both United and Ohio to end their controversy by having the court fully settle and adjudicate the aforesaid issue between them and they made that desire fully evident in the prayers and at trial. They wanted this decision to declare the rights and obligations of both respecting their liability for Gilbert's negligence under the "coverage" afforded by their respective policies. We agree with the trial court that the pleadings embraced and presented this ultimate and controlling issue and that it was not only fully and adequately presented by the pleadings and proof but was also well and properly within the competent authority of the court to decide. The parties themselves indicated that this was their understanding of the purpose of the suit.[4]

Ohio concedes that its policy imposes joint-liability with United in the Echols' suit because it was an insurer of Pacific which was sued and became liable, (under the doctrine of imputed negligence) as the employer of Gilbert. (See footnote 2.)

The theory of Ohio is that if the negligence of Gilbert caused a loss to Pacific which in turn caused a loss to Ohio due to its liability to defend Pacific in the Echols' suit, then Ohio would be entitled to a declaratory judgment establishing the primary and ultimate liability of Gilbert for the Echols' claim and further authorizing Ohio to recoup its loss from Gilbert, an assured of United, and thereafter the liability would ultimately fall on United.[5]

On this postulate Ohio urged that in order that the entire controversy be finally ended by an adjudication of rights and liabilities, the judgment of the court should declare and establish (1) the primary and ultimate liability of Gilbert for the Echols' accident, (2) that United is *obligated,* within the limits of its policy, to respond to and satisfy any judgment which may be rendered against its insured Gilbert in connection with said accident, and is also obligated, within the limits of its policy, to *reimburse* Ohio for all expenditures, *reasonably and necessarily made,* or to be made by Ohio to or on behalf of Echols and his son, or in satisfaction of any judgment in the Echols' case or in a compromise settlement of the Echols' claim.

---

4 Ohio argued at trial that under the pleadings of both companies, and under United's prayer (in which Ohio joined) the court possessed competent authority to decide every issue so presented. The court indicated that it regarded United's prayer as broad enough to call upon the court to declare the responsibility of either company for a judgment arising out of Gilbert's negligence in the Echols' case, and the legal rights and obligations of these insurance companies with respect to the negligent act of Gilbert. Counsel for United stated, "We feel that the court has power * * * we wish the controversy decided on the assumption that the state court is without authority to enter a judgment for or against Gilbert." (Personal service was not made on him in the Echols' action.) The court then said: "The prayer of your complaint is otherwise, isn't it"? To which counsel for United answered, "We are here to have the entire controversy decided." Later counsel for United stated: "We have no objection to the court deciding all questions that the court feels should be decided. We brought the action and we do not wish to narrow the issues." This was also Ohio's position.

5 An employer against whom a judgment has been rendered for damages occasioned by the unauthorized negligent act of an employee may recoup his losses in an action against the negligent employee. See Johnston v. City of San Fernando, 35 Cal.App.2d 244, 246, 95 P.2d 147; Myers v. Tranquility Irr. Dist., 26 Cal.App.2d 385, 389, 79 P.2d 419.

Ohio contends that the recoupment rule announced in the cases cited in Footnote 5 would also apply where *a reasonable and necessary settlement* is made; that due to their joint-liability status under their policies United and Ohio settled the Echols' suit (see details footnote 2); and while an employer making such a settlement could not rely upon a judgment against Echols to prove that this settlement was reasonable and necessary, see L. J. Dowell, Inc., v. United Pacific Casualty Co., 191 Wash. 666, 72 P.2d 296, 306, 307, pars. 16-18, nevertheless a later judgment against Gilbert to provide such proof should not be necessary as a condition precedent to the establishment of United's liability since all of the essential facts establishing Gilbert's negligence were stipulated by United and a judgment against Gilbert could establish nothing more in that regard and would be an idle act. In short, Ohio would have it that by their voluntary act of settlement of the Echols' claim both companies recognized and established the ultimate fact of Gilbert's negligence, and United admitted the reasonableness and necessity of the settlement made in the Echols' case by agreeing to it when it could have defended the claim in a trial.

By way of argument Ohio points out that if the United policy to Mission covered Mission only and did not insure Gilbert as an individual (Ohio claims that its policy insures Pacific only) and Gilbert had a separate insurance policy with a different insurer, then United would now be doing exactly what it contends Ohio may not do—that is to say, it would proceed against Gilbert and his insurer to recover its own expenditure made to protect Mission.

Boiled down, Ohio's contentions are that it is entitled to pursue its remedy as subrogee of Page and McKeon dba Pacific; that it has discharged the liability of Pacific in the Echols' matter and in this action seeks judgment establishing its right to recoupment by way of subrogation to the rights of its assureds McKeon and Page dba Pacific; that such a judgment is proper in this action unless Ohio also insured Gilbert, and it denies that its policy does insure Gilbert; that both Page (as Mission) and McKeon and Page (as Pacific) have a clear right of action to recover from Gilbert the sums necessarily expended in payment for his torts, and in an action for that purpose, no issue of contribution between joint tort feasors would be involved—this because in such an action the negligence of the employee is not imputable to the employer (see Footnote 5); that by reason of its extended coverage United directly insured Gilbert and it cannot subrogate against itself; that Ohio disclaims any right of recoupment against Page—its claimed right r u n s against Gilbert and since the purpose of this action is to finally establish the respective rights of the two companies, it was proper for the court, under the facts of this case, to declare and fix the liability of United for the tort of Gilbert in order to avoid a multiplicity of actions.

In short, Ohio's contention is that its policy to Pacific insured only *partnership risks*, as such. It agrees that one of such risks was the negligence of Gilbert who was acting as Pacific's employee (within the scope of his duties as such) when he injured the Echols, hence the joint-liability of Mission and Pacific to defend the Echols' suit. These were the basic contentions before the court.

In its judgment the court recognized Ohio's right to recoupment from Gilbert, but we think that in so doing it did not decree a contribution between joint tort feasors. As between themselves, and toward the Echols, there was no primary or secondary liability of Ohio and United. Each company was wholly liable for the Echols' accident, within the limits of its policy. Here United asked the court to declare its rights as an insurer respecting another insurer and the court equitably ruled that each company should discharge its obligation to its assureds and that as between Page on the one hand and McKeon and Page on the other, the loss should be discharged equally.

Ohio points out that the parties have already paid the Echols' loss—if either had paid too much, as between themselves, there could not be any refund because there is no contribution between tort feasors or their insurers. The liability of each was vicarious and traced through Gilbert. United was the insurer of Gilbert who

caused the accident and who carries the ultimate liability to those who suffered loss through him.

The case was tried to the court without a jury, and submitted on a stipulation of facts and issues. Copies of the respective policies were attached to the stipulation, and a picture of the truck above referred to was also placed in evidence, the truck bearing the legend "Pacific Cleaners." The parties stipulated that Pacific had rented this truck from United's assured as indicated above. Findings and Conclusions were entered upon which a Judgment for Ohio was rested. By this judgment the court decreed that United should *reimburse* Ohio for all expenditures reasonably and necessarily made by it in compromising the claim of the Echols. The judgment established that *until* the limits of United's policy ($10,000 for injury to or death of one person and $25,000 for the entire accident) are exhausted, both companies are jointly obligated to respond to and satisfy any judgment for death or injury rendered in the Echols' suit. The satisfaction of the balance, if any, of any judgment in excess of $20,000 (twice United's limit) for death of or injury to any one person and $50,000 for the entire (Echols') accident shall be the obligation of Ohio. (See details Footnote 2.) Both were required to bear equally the property damage established in that action up to $10,000. In paragraph 6 thereof the Judgment provides that United's policy makes it the insurer of Gilbert personally and fixes the liability of United to Ohio resulting from the loss to Ohio by reason of the settlement of the Echols' claim. (See text of paragraph 6, infra.)

Two controverted matters may be eliminated at this point. We do not agree with the contention of United that the court failed to follow California law. We think that it did. We are also of the view that within the framework and scope of the pleadings and the respective prayers for relief by judgment, the court properly endeavored to lay at rest and finally settle the issue as it was presented for adjudication. The court did exactly what the litigants asked—it adjudicated the issues they presented and which they appeared to re-gard as being well within the area of the court's power to decide in a declaratory judgment proceeding.

In resolving the question of "coverage" of Gilbert as an "insured" under the two policies, the court relied on the provisions of the policies and attached endorsements and "riders." It endeavored to ascertain exactly what sort of protective coverage Pacific and Mission secured in their policies. While United admits that it insured Gilbert personally under its "extended coverage," it also insists that the terms of Ohio's Pacific policy made Ohio an insurer of Gilbert personally and Ohio thus jointly insured Gilbert with United. Hence there is no basis for the relief of recoupment against United sought by Ohio and granted by the court in its judgment.

Ohio relies on the terms of its Pacific policy to repel this contention of United. It asserts that this policy was intentionally and deliberately fashioned (and sold to and bought by Pacific) for the express and definite purpose of excluding an employee like Gilbert and was designed to protect and insure *only* a *partnership entity* called Pacific against a liability claim such as the one that arose in the Echols' case where a claim of that nature may properly be asserted against Pacific under the doctrine of respondeat superior and employee negligence imputed to an employer.

Ohio concedes that it is obligated under its policy to defend Pacific in the Echols' suit but asserts that in so doing it defends only the *partnership entity* (Pacific) which is specified in its policy as the *named assured,* and that it is not called upon to tender a defense to Gilbert for his personal negligence since it did not insure Gilbert personally against liability for such negligence. Answering this contention, United argues that since California holds to the aggregate theory of partnerships, each partner owns the (partnership) property of the others, and there can be no such thing as a *partnership entity* which can be insured separately and apart from the members composing the partnership. Therefore, a partnership as an entity cannot lawfully be insured under California law and any policy purporting to insure such an "entity" is invalid. Hence Ohio, under

its policy, must be regarded as an insurer of Gilbert. United cites as conclusive authority for this principle Park v. Union Manufacturing Co., 45 Cal.App.2d 401, 114 P.2d 373 and Reed v. Industrial Accident Commission, 10 Cal.2d 191, 73 P.2d 1212, 114 A.L.R. 720.

United's position would seem to be that a California partnership cannot be recognized as an *entity* for any purpose. On this theory Page is Page wherever found, and therefore a vehicle owned by and registered to Page dba Mission *is* a vehicle owned by and registered to Page *as* a partner in McKeon and Page dba Pacific (Ohio's assured).

Citing authority thought to be apposite, Ohio contends to the contrary. It argues that *for insurance purposes* the parties to a contract of insurance *may recognize a partnership entity* and thus segregate one risk from another on that basis. It is asserted that if this were not so no insurer could issue a policy without including in the policy every activity of the insured, however extensive, and diversified (see footnote 1), and however limited the premium. Every partnership policy would extend to the constituent partners individually and as members of other partnerships, and every individual policy would apply to all other partnership activities regardless of painstaking efforts on the part of all parties to avoid such results and in spite of premium calculation on another basis. Insurers would find themselves exposed to expressly (contractually) rejected risks for which no premium was collected and assureds provided with gratuitous coverage which they did not wish to purchase.

As indicated in footnote 1 herein, Page was engaged in various, scattered business enterprises and he must have known that he was exposed to risks as an individual which he did not share with his partner McKeon in Pacific.

Ohio points to an effective endorsement on its policy to Pacific which reads as follows:

"It is agreed that the coverage provided under the policy to which this endorsement is attached *shall not apply* to the liability of G. B. Page, a partner [in Pacific] *for* his personal non-business exposures or activities; *or his liability in connection with other business activities as an individual, a member of other partnerships,* a receiver, a director, or an executive officer of a corporation." (Emphasis supplied.)

The Ohio policy provides (extended) coverage, in addition to *the named assureds,* to inter alios:

"* * * with respect to automobiles *owned by or registered in the name of the Named Assured* * * * an y p e r s o n while using *the* automobile and any person or organization legally responsible for the use thereof provided the actual use is with the permission of the Named Assured." (Emphasis supplied.) [6]

The Ohio policy provides in the body thereof:

"If the Named Assured is a * * * co-partnership, the word 'Assured' wherever used in this policy shall include executive officers, directors or co-partners respectively, in their capacities as such."

A further provision in Ohio's policy reads:

"Other Insurance—If other valid insurance or indemnity exists protecting the Assured or any person or organization entitled to protection hereunder from liability for bodily injury * * * or death, or for damage to property of others, this policy shall not apply in respect to such specific hazard otherwise covered, whether the Assured is specifically named in such policy or not; provided, however, that if the limits of insurance in this policy are in excess of the limits provided by said other insurance this policy shall provide *excess insurance* against such hazard in an amount sufficient to give the Assured a combined amount of protection equal to the limits of this policy." (Emphasis supplied.)

 As sustaining the right of contracting parties to restrict the "coverage" of a liability policy, Ohio cites National Automobile Insurance Company v. Industrial Acc. Comm., 11 Cal.2d 689, 691, 81 P. 2d 926. This case supports the principle

---

[6] As indicated above, Page dba Mission was the owner of the accident vehicle. It was not owned by or registered in the name of Pacific.

844

that *for insurance purposes* the parties may recognize a partnership entity and thus segregate one risk from another on that basis. See also National Automobile Insurance Company v. Industrial Acc. Comm., 11 Cal.2d 694, 81 P.2d 928. We think that the Ohio-Pacific policy comes squarely within the principle announced in these cases and that the policy limits the liability of Ohio to the *named assured* therein unless it can be said that certain other provisions in the Ohio policy and a statute of California cause the Ohio policy to cover and insure Gilbert personally. We consider these matters at this point.

United insists that under Section 383.5 of the Insurance Code of California, McKeon and Page dba Pacific, were the *owners* of the accident vehicle driven by Gilbert; that Gilbert was driving it with their *permission* (see also Footnote 3) and therefore became an *additional insured* under the "extended coverage" provision of the Ohio policy quoted above. United says that under this statute any person *named* in a policy of automobile insurance *is* an owner of the motor vehicle and it supports this contention by quoting certain pertinent provisions of Section 383.5 which reads as follows:

"Contracts of motor vehicle insurance: Definitions: Embodment of contract in document: Delivery: Suspension or revocation of agent's license or insurer's certificate of authority: Purpose of section.

" 'Document,' as used in this section, means a policy or a certificate evidencing insurance under a master policy. Such policy or certificate shall conform to Section 381 and shall segregate the premiums charged for each risk insured against. Such a certificate, in lieu of specifying the risks insured against, may designate them by name or by description.

" 'Owner' as used in this section means any person who is named as an insured in such contract of insurance or document, or in a loss payable clause therein, and, whether or not he is named therein, the vendee, pledgor, or chattel mortgagor of a motor vehicle where insurance contracts subject to this section are procured with respect to the motor vehicle by or on behalf of either party to the purchase, pledge, or mortgage.

"Every contract of insurance against hazards incident to ownership, maintenance, operation and use of motor vehicles shall be embodied in a document.

\* \* \* \* \* \*

"The purpose of this section is to prevent fraud or mistake in connection with the transaction of insurance covering motor vehicles and in furtherance of that purpose the commissioner may make reasonable rules and regulations therefor."

■ While the statute says that a person "who is named as an insured" is to be regarded as an owner it does not provide that persons who are specifically *excluded* in a policy of insurance must be regarded as an "owner." The Ohio policy set forth the *named assureds* as "McKeon and Page dba Pacific," but not Page in any other capacity. We are not aided by the citation of any California case interpreting this statutory language and therefore feel free to interpret it as inapplicable to the facts of this case. We conclude that the trial court was correct in so holding under the doctrine of the National Automobile cases cited above.

■ United contends that there was "double insurance" in this case under the doctrine of Consolidated Shippers, Inc., v. Pacific Employers Insurance Co., 45 Cal. App.2d 288, 114 P.2d 34 and Lamb v. Belt Casualty Co., 3 Cal.App.2d 624, 40 P.2d 311. Double insurance is defined in Section 590 of the California Insurance Code as existing "where *the same person* is insured *by several insurers separately* in respect to the same subject and interest." (Emphasis supplied.) We do not agree. If either Page dba Mission, *or* McKeon and Page dba Pacific, were insured by several insurers, there would be double insurance. The Consolidated and Lamb cases, supra, involved policies issued by different companies *to the same assured,* not to different assureds and did involve double insurance. Where separate defendants are insured in different companies there is no double insurance. In the cases mentioned, the assured had a policy with two companies covering the same loss, thus resulting in double insurance. Such a result could be reached in this case only by holding that the

exclusions in the Ohio policy are without meaning and that Page, in his individual capacity, is insured as a partner in Mc-Keon and Page despite the care to exclude him, as such an insured. Further, the policies in each case cited above had pro-rata clauses excluding recovery from the insurer a larger proportion of any loss than the coverage bore to the whole amount of applicable insurance. Such provisions are absent in the policies we are considering. Ohio's policy provided that if there was other insurance, Ohio's coverage should be *excess* only and the same is true respecting United's policy. Such clauses cancel each other so far as concerns the argument here advanced.

We agree with Ohio that this case involves no, problem of prorating insurance but rather presents the question of who carries the insurance on the ultimately liable single tort feasor—Gilbert.

United says the most grievous error of the lower court arose in failing to recognize the rule that a "rider" attached to a policy takes precedence over the language in the body of the contract. This reference is to a certain rider styled "Certificate of Insurance" which was attached to the Ohio policy several months after the date of its execution. The rider was issued to Camp Cooke Post Exchange (an Army operation) and contains language which United asserts clearly shows that Ohio's policy provides a coverage which applies to all automobiles owned or operated by its insured. The argument is that Gilbert was an employee of Ohio's *named assured* (Pacific) and using the accident vehicle in the business of Pacific, therefore the automobile was *operated* by the insured and covered Gilbert and made him an insured under the policy.

The relevant part of this "Certificate" recites that Ohio "does hereby certify *that the following described policy· has been issued and is in force at this date.*" (Emphasis supplied.) This quoted language indicates exactly what Ohio was "certifying" to Camp Cooke. The certificate then proceeds to set forth the date of the policy and *the name of the insured* which is stated to be "R. H. McKeon and G. B. Page dba

Pacific"; that the "coverages and limits of liability" are "$25,000 each person, $50,000 each accident. Property damage liability $5,000 each accident. * * * Coverage applies to all automobiles owned or *operated* by the insured, * * *.*" United emphasizes the word "operated" and would have us regard its sense in the certificate as extending the insurance to Gilbert.

█ It appears to have been the view of the trial court that the language of the "Certificate" in no wise served to modify or alter the effect or coverage of the Ohio policy. We think that the language employed supports such an inference. We cannot agree with United that this Certificate extended or purported to extend the coverage of the policy beyond the *named assured* therein so as to thereby insure Gilbert personally. We think that it fairly appraises this "rider" to describe it as one which merely recites the terms and conditions appearing in the Ohio policy. In short, the Certificate provides information —not added or extended coverage. For some undisclosed reason the Army Post Exchange appears to have wanted an instrument or document of this· character, and Ohio supplied it.

The trial court found as a fact that it was intended to apply only to operations of a limited character performed by the assured on behalf of the Post Exchange. There is no evidence or suggestion that Gilbert was acting directly or indirectly in connection with any errand to or from Camp Cooke and the court found that this endorsement was "issued for the protection of the said Camp Cooke Post Exchange in connection with activities of the assureds conducted on behalf of Camp Cooke Post Exchange and that said endorsements did not otherwise affect or modify said policy and were not intended to do so"; and further "that at the time of the accident in question the truck was not being operated on behalf of Camp Cooke Post Exchange."

There is no direct evidence in the record which throws light on the specific purpose of the "Certificate." There was no oral testimony in the trial—the court had to rely on the policies themselves aided only by

explanations and argument offered by counsel, and from this material draw whatever inferences seemed logical and just. The contending parties made their own case. The court accepted what they offered, and in the end concluded that Pacific sustained some sort of a special relation to this Post Exchange which induced it to procure the Certificate from Ohio to satisfy some requirement of the Exchange. No reference to this Certificate appears in a pretrial Stipulation of Facts although Ohio's policy was made an exhibit therein, and the Certificate is not made an issue in the statement of pre-trial contentions. We conclude that this Certificate on the Ohio policy did not "extend" personal insurance to Gilbert.

■ The Findings are lengthy and embrace and dispose of the many issues presented by the contentions of the parties. Their length forbids more than a summary of the more material and decisive provisions. We, therefore, state the substance rather than the text of the more material provisions:

The court found (1) that United's policy covered any person while using an automobile owned by Page provided the use was with the permission of Page; (2) that Ohio's policy, by typed endorsement, provided that the coverage shall not apply to the liability of Page, a partner in Pacific, for his personal non-business exposures or activities or his liability in connection with other business activities as an individual, or a member of other partnerships; that it was the intention of McKeon and Page dba Pacific and of Ohio to recognize the various partnerships of McKeon and Page insured by Ohio's policy, including the partnership conducted under the name of Pacific as separate entities and to differentiate the activities of Page as a partner of McKeon in the enterprises named in the Ohio policy from the activities of Page individually or in connection with any unspecified activity; (3) that Ohio's policy provides coverage to the following persons, inter alios, in addition to its named assureds: "with respect to automobiles owned by or registered in the name of the Named Assured * * * any person while using the automobile, etc."; that at the time Gilbert was driving the truck as

a servant and employee of McKeon and Page dba Pacific, the truck was owned by Page dba Mission and Gilbert was driving the truck with the permission of Page dba Mission; (4) that the injuries and damages to the Echols, appellees herein, and each of them, were solely and proximately caused by the negligence of Gilbert; (5) that the parties defendant in the Echols' suit were named as Pacific, Mission and Gilbert; (6) that Robert Echols and Beverly Echols are entitled to recover damages in excess of $3,000 against McKeon and Page dba Pacific and Page dba Mission solely through the imputation to them of the negligence of Floyd Gilbert by operation of law; (7) that the United policy attaches to and covers the liability of Page dba Mission and the liability of Gilbert in connection with the Echols' accident up to the limit of the United policy; that Ohio's policy attaches to and covers the liability of McKeon and Page dba Pacific for the Echols' accident up to the limits of said policy; (8) that Ohio's policy does not cover or attach to the liability of Gilbert; that Gilbert at the time of the accident was not operating the vehicle *owned by or registered in the name of any Named Assured or person insured in or by the Ohio policy;* (9) that Ohio's policy does not cover or attach to the liability of Page individually or dba Mission; that the truck involved in the said accident and driven by Gilbert was not a vehicle owned by or registered in the name of any Named Assured or person insured by Ohio's policy; (10) that at the time of the Echols' accident Gilbert was operating and using an automobile owned by Page individually and dba Mission, a Named Assured under United's policy, and Gilbert was therefore an assured of United at the time of the Echols' accident within the meaning of United's policy; (11) that as his employers McKeon and Page dba Pacific were, through Gilbert, persons legally responsible for the use of the vehicle then owned by the Named Assured of United's policy, the said accident vehicle then being operated with the permission of the Named Assured in United's policy; that therefore McKeon and Page dba Pacific were at the time of the Echols' accident, assureds under United's policy and covered and indemnified there-

under as well as under Ohio's policy; (12) that at the time of the Echols' accident Page individually or dba Mission was not a person operating or using a vehicle owned by or registered in the name of the Named Assured in Ohio's policy and that therefore the said Page individually or dba Mission is not insured by or indemnified by the policy of Ohio; (13) that Page acting individually and dba Mission at all times acted in a different capacity from Page as a partner of McKeon dba Pacific, and at all such times acted outside the coverage of Ohio's policy; that the renting or leasing of the truck by Page dba Mission *to* McKeon and Page dba Pacific, and the ownership of said truck by Page individually and dba Mission, and the registration of said truck to Mission, were activities and functions of Page in capacities other than as a partner of McKeon in any partnership which was an insured under Ohio's policy; (14) that the endorsement issued to Camp Cooke was for purposes as indicated above in this opinion.

Upon these Fndings the court entered Conclusions of Law which are summarized by stating the substance thereof: (1) That United is obligated under its contract of insurance to provide a defense of its assureds Page individually and dba Mission and Gilbert in the Echols' action; that United is obligated under its contract of insurance and within the limits thereof to respond to and satisfy any judgment which may be rendered against its assureds or either of them in the Echols' action; (2) that Ohio is obligated under its contract of insurance to provide a defense in the Echols' action for its assureds McKeon and Page dba Pacific and within the limits of said policy and subject to the limitations next mentioned to respond to and pay any judgment which may be rendered in the Echols' action against McKeon and Page dba Pacific; (3) that United and Ohio are jointly obligated to respond to and satisfy any judgment for death or injury which may be rendered in the Echols' action against McKeon and Page dba Pacific as follows:

"(a) Equally and co-extensively, dollar for dollar, until said judgment or judgments are satisfied or until plaintiff's [United] policy limits (of $10,000.00 for injury to or death of one person and $25,000.00 for the entire accident) are exhausted, whichever sum is smaller, and

"(b) The satisfaction of the balance, if any, of any judgment in excess of $20,000.00 (twice plaintiff's [United] limit) for death of or injury to any one person and $50,000.00 for the entire accident shall be the obligation of the defendant The Ohio Casualty Insurance Company."

(4) that United and Ohio are obligated to respond to and satisfy any judgment for property damage in the Echols' action which may be rendered against McKeon and Page dba Pacific equally and co-extensively, dollar for dollar, until said judgment or judgments are satisfied or until the combined payments of said parties equal the sum of $10,000 (twice the $5,000 limit of each policy) whichever is the smaller sum; (5) that United insures the liability of Gilbert in connection with the Echols' accident and is obligated, within the limits of its policy, to respond to and satisfy any judgment which may be rendered against Gilbert in connection with the said accident. United is also obligated, within the limits of its policy, to reimburse Ohio for all expenditures, reasonably and necessarily made, or to be made by Ohio, to or on behalf of the Echols: (1) in satisfaction, in whole or in part, of any judgment which may be recovered by the Echols or (2) in compromise settlement, in whole or in part, of the claims of the Echols arising out of aforesaid injuries to them.

Upon the foregoing Findings and Conclusions of Law the court entered judgment in favor of Ohio which conforms to the provisions of the noted Findings and Conclusions.

Paragraph VI of the Judgment reads as follows:

"That the plaintiff United Pacific Insurance Company insures the liability of Floyd Gilbert in connection with the said accident of January 16, 1946, and is obligated, within the limits of its policy, to respond to and satisfy any judgment which may be rendered against Floyd Gilbert in connection with the said accident. Said plaintiff United Pacific Insurance Company is also obligated, within the limits of its policy, to reimburse defendant The Ohio Casualty

848

Insurance Company for all expenditures, reasonably and necessarily made, or to be made by it, to or on behalf of Robert Echols or Beverly Echols: (1) in satisfaction, in whole or in part, of any judgment which may be recovered by Robert Echols or Beverly Echols in the aforesaid San Luis Obispo action or (2) in compromise settlement, in whole or in part, of the claims of Robert Echols or Beverly Echols arising from said accident of January 16, 1946."

In its brief, United summarizes its final contention in the following language:

"* * * The companies have settled the case, each paying one-half of the loss. United does not find particular fault with its actual position as matters now stand, but does earnestly complain of its obligation, under the decision of the District Court, to reimburse Ohio fully as soon as Ohio reduces its purported claim against Gilbert to judgment. * * * United now informs the Court that Ohio has an action pending in the District Court of Douglas County, Nebraska, against Gilbert and that it looks to United to satisfy any judgment it obtains in said action against Gilbert."

The response of Ohio to this last contention is that Ohio has served Gilbert with process in Nebraska which was done as a precautionary measure only; that Ohio should not be required to prove in a Nebraska court those things which United admitted in the lower court.

The Findings find ample support in the evidence and we cannot say that they are clearly erroneous. From the entire record we conclude that the liability of United was properly determined, and the judgment is affirmed.