[Civ. No. 8607. Fourth Dist., Div. Two. Feb. 20, 1968.]

OHIO CASUALTY INSURANCE COMPANY, Plaintiff and Respondent, v. HARBOR INSURANCE COMPANY et al., Defendants and Appellants.

208

Waters, McCluskey & Corcoran and William W. Waters for Defendants and Appellants.

Parker, Stanbury, McGee, Peckham & Garrett and Franklin J. Dimino for Plaintiff and Respondent.

McCABE, P. J.—This appeal, brought by defendant Harbor Insurance Company (Harbor), is from a declaratory judgment in favor of plaintiff Ohio Casualty Insurance Company (Ohio), determining the respective obligations of each party to indemnify and defend a third party claim for property damage lodged against their respective insureds. Judgment in favor of plaintiff Ohio was entered May 6, 1966, declaring defendant Harbor's obligation to return the settlement contribution made by plaintiff Ohio and to pay any costs and attorney's fees incurred by Ohio in connection with the third party claim as well as costs and attorney's fees in the present action. Motions for new trial and to vacate the judgment were timely made by defendant Harbor, and they were denied June 8, 1966. Notice of appeal was filed June 22, 1966.

The Irvine Company (Irvine) owned, and desired to lease for residential development, a large tract of land situated along the eastern side of upper Newport Bay. Irvine created two subsidiary corporations, Eastbluff-Newport, Inc. (Eastbluff) and Jamboree Land Company (Jamboree) leasing a portion of the tract to each. In the spring of 1963 all the stock of Eastbluff was purchased by John D. Lusk and Sons (Lusk)

and all the stock of Jamboree was purchased by Macco Corporation (Macco).

Eastbluff and Jamboree entered a joint venture agreement on May 9, 1963, known as Macco-Lusk, sharing equally the profits and losses relative to grading, drainage and street construction within the Irvine Tract. Each member to develop its respective portion independently thereafter. Plaintiff Ohio insured Eastbluff under a comprehensive liability policy issued to Eastbluff with a maximum property damage limit of $500,000. Defendant Harbor insured Jamboree and Macco-Lusk, the joint venture, under a comprehensive liability policy issued to Macco with a maximum limit of $3,000,000.

In November of 1963, during the course of grading the Irvine Tract and prior to installation of a drainage system, heavy rains caused volumes of water and mud from the Macco-Lusk tract to fall upon an adjacent salt works, leased from Irvine by Western Salt Company (Western). Western filed suit on April 8, 1964, naming Jamboree and Eastbluff *inter alia,* as defendants. By its first amended complaint on November 20, 1964, Western prayed for $96,857.77 compensatory and $50,000 punitive damages. Macco-Lusk (the joint venture) was served as one of the defendants.

After suit by Western was initiated, and before settlement of that action occurred, plaintiff Ohio filed the declaratory relief action which is the subject of this appeal. By the declaratory relief action plaintiff Ohio sought an adjudication that (1) defendant Harbor be required to defend the Western action for Eastbluff, (2) there be a determination as to coverage under the terms of the policies, (3) defendant Harbor be required to pay Ohio's costs in defense of Eastbluff, and (4) costs of suit.

The Western claim was ultimately settled for approximately $55,000 and dismissed with prejudice. The parties to the Western action decided the percentage share of Macco-Lusk liability was 29 percent or approximately $15,950. Ohio, insurer of Eastbluff, contributed one-sixth or $2,658.33 of the Macco-Lusk portion of the settlement obligation. Harbor, insurer of Jamboree and Macco-Lusk, contributed five-sixths of the Macco-Lusk settlement obligation.

Harbor contends: (1) The evidence does not support the trial court's findings of fact; (2) the judgment is not supported by the findings of fact; (3) Ohio was a volunteer; and (4) the judgment is against the law.

Harbor's first two contentions lack merit. Viewing the evidence most favorably to plaintiff, (*Waller* v. *Southern Pac. Co.*, 66 Cal.2d 201, 204 [57 Cal.Rptr. 353, 424 P.2d 937]; *Estate of Teel*, 25 Cal.2d 520, 527, [154 P.2d 384], and determining that it is not improbable, unreasonable or speculative, *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Municipal Water Dist.*, 236 Cal.App.2d 238, 257 [45 Cal.Rptr. 793]; *Scott* v. *Federal Life Ins. Co.*, 200 Cal.App.2d 384, 396-397 [19 Cal.Rptr. 258]; *Estate of Teed*, 112 Cal. App.2d 638, 644 [247 P.2d 54], the trial court's findings of fact are supported by substantial evidence. By construing the trial court's "findings" and "conclusions of law" in conjunction, and without regard to classification, sufficient findings of fact exist to support the judgment. (*Bechtold* v. *Bishop & Co., Inc.*, 16 Cal.2d 285, 293 [105 P.2d 984]; *Gustafson* v. *Blunk*, 4 Cal.App.2d 630, 636 [41 P.2d 953]; *Butler* v. *Agnew*, 9 Cal.App. 327, 330-331 [99 P. 395].)

The determinative issues herein are raised by appellants' last two contentions. ▪ The trial court erred as a matter of law in concluding plaintiff Ohio and defendant Harbor were, by virtue of their respective policies, coinsurers of the same risk; Harbor being the primary insurer and Ohio the excess. The error, however, is not fatal to that portion of the judgment concerning Ohio's settlement contribution. (*Davey* v. *Southern Pac. Co.*, 116 Cal. 325, 329-330 [48 P. 117]; *DeCastro* v. *Rowe*, 223 Cal.App.2d 547, 557-558 [36 Cal.Rptr. 53].) ▪ The trial court further erred as a matter of law in concluding Harbor was obligated to assume the defense of Eastbluff, Ohio's insured. This latter error requires partial reversal of the judgment.

▪ In Findings VI and VII, the trial court concluded Eastbluff was an insured of both Harbor and Ohio and that Harbor's policy was primary and Ohio's excess. That conclusion is contrary ot the language of both policies. Pertinent language from the Harbor policy insuring Jamboree and Macco-Lusk provides:

"I. INSUREDS SEVERALLY AND NOT COLLECTIVELY.

"(A) NAMED INSURED

"(1) MACCO CORPORATION AND MACCO CORPORATION D/B/A MACCO LUMBER COMPANY . . .

". . . . . . .

"(4) AT THE ELECTION OF THE NAMED INSUREDS DESCRIBED UNDER PARAGRAPH (A)(1):

". . . . . . .

"(B) ANY SUBSIDIARY OR ALLIED OR AFFILIATED OR PROPRIETARY COMPANY OR CORPORATION, OR OTHER ENTITY WHICH MAY EXIST, OR WHICH THE INSURED NAMED IN PARAGRAPH (A)(1) ABOVE MAY ACQUIRE OR ORGANIZE DURING THE PERIOD COVERED BY THIS POLICY.

"(C) ANY JOINT VENTURE, SYNDICATE OR PARTNERSHIP NOW IN BEING OR HEREAFTER CREATED IN WHICH THE ABOVE NAMED INSURED IS A MEMBER, PROVIDED THE COMPANY IS NOTIFIED WITHIN 60 DAYS OF THE INCEPTION OF ANY SUCH JOINT VENTURE, SYNDICATE OR PARTNERSHIP. [Emp. added.]

". . . . . . . . . . . . .

"VII. OTHER INSURANCE.

"IF THERE BE ANY OTHER INSURANCE AGAINST A CLAIM OR LOSS COVERED BY THIS POLICY, THE INSURANCE UNDER THIS POLICY SHALL BE DEEMED EXCESS INSURANCE OVER AND ABOVE AND NOT CONTRIBUTING WITH SUCH OTHER INSURANCE. . . ."

Endorsement 100 effective May 15, 1963, was attached to the Harbor policy and contained the following: "IT IS UNDERSTOOD AND AGREED THAT THE JAMBOREE LAND CO. (A SUBSIDIARY OF THE MACCO CORPORATION) IS ADDED AS AN ADDITIONAL NAMED ASSURED HEREUNDER. IT IS FURTHER UNDERSTOOD AND AGREED THAT NOTICE IS ACCEPTED HEREUNDER OF THE INCLUSION OF: MACCO-LUSK, A JOINT VENTURE. . . ." (Emp. added.)

Ohio's policy insuring Eastbluff provides: "16. OTHER INSURANCE COVERAGES A, B AND C. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit stated in the declarations bears to the total collectible insurance against such loss. . . .

"All insurance under this policy shall be excess insurance with respect to loss against which the named insured has other insurance disclosed to the company as in effect on the effective date of this policy. . . ."

Assuming, *arguendo*, that both policies insured the same

risk, Harbor would necessarily be the excess insurer and Ohio the insurer primarily liable since the effective date of Harbor's indorsement No. 110 is May 15, 1963, and that of Ohio's policy is May 1, 1963; therefore, Ohio's excess clause could not be operative. If Ohio's insured, Eastbluff, was as a matter of law also an insured under Harbor's policy, then by the terms of Harbor's policy Ohio would be a coinsurer, one consequence of which is an obligation to indemnify in accordance with the "other insurance" provisions and coverage limitations of each policy—the judgment below, however, held Ohio wholly free from liability. Ohio's claim against Harbor properly rests on a different theory; that Ohio asserts the rights of Eastbluff, its insured, solely as a member of the joint venture, no coinsurance relationship having been created between the parties by reason of their respective policies.

Harbor has contended throughout that Eastbluff was not an included insured under its policy. Instead Harbor argues Ohio's duty to contribute arose because joint venturers, like partners, are jointly and severally liable for adventure obligations.

Hence the questions framed are:

1. What was Eastbluff's status under the Harbor policy?

2. If Eastbluff is not an insured of Harbor, what are the obligations of the members of a joint venture with respect to third party claims arising from the adventure?

■ Coinsurance exists only when the insurable interest contemplated by both policies is identical, i.e., coverage by different insurers of the same insured and the same risk. (Ins. Code, § 590; 16 Couch on Insurance 2d, §§ 62:92, 62:94; 62:95 and 62:161.) For example, excess and prorata. "other insurance" clauses do not operate between separate insurers of mortgagor and mortgagee since the respective policies cover different insurable interests in the same property. (*Mosee* v. *Firemen's Ins. Co. of Newark,* 87 Cal.App. 473, 475-476 [262 P. 436]; *Peerless Ins. Co.* v. *Bailey Mortg. Co.,* 345 F.2d 14, 17-18.) There is no proration between the separate insurers of partners when each partner has insured his own interest alone and not that of his copartners as well. (*American Central Ins. Co.* v. *Harrison* (Tex.Civ.App.) 205 S.W.2d 417, 420-421; see *Russell* v. *Williams,* 58 Cal.2d 487, 492 [24 Cal.Rptr. 859, 374 ·P.2d 827].) ■ Most cases deal with fire insurance but the legal effects of coinsurance clauses apply equally to .public liability policies. (*Fidelity etc. Co.* v. *Firemen's Fund. Indem. Co.,* 38 Cal.App.2d 1, 6-7 [100 P.2d 364].) ■ Although joint

venturers are, like partners, jointly and severally liable for adventure activities, they clearly have separate insurable interests in joint venture property and also as to liabilities arising from its use. Merely insuring one member does not provide automatic coverage of other members or of the joint venture entity. *Liability may be joint but the insurance need not be.* The fact that Jamboree was a named insured of Harbor does not make Eastbluff an additional insured under the Harbor policy.

In Finding II the trial court found Macco-Lusk to be a separate insured of Harbor, and the evidence supports that finding. If Macco merely desired to add Jamboree alone, it could have done so under Paragraph (1(A)(4)(B) of the Harbor policy, set forth above, without characterizing Jamboree as a *named* insured. The purpose in so labelling Jamboree must surely have been to make Paragraph (1)(A)(4)(C) of the Harbor policy operative as to Macco-Lusk. Under this latter paragraph only a *named* insured's membership in a joint venture would extend coverage to the adventure. Macco Corporation was not a member, Jamboree was. The language in indorsement 110, "notice is accepted" is in perfect compliance with Paragraph (1)(A)(4)(C). Furthermore, the evidence indicates it was the venturers' intent that Jamboree representatives procure insurance coverage for the joint venture.

If Eastbluff became an insured under Harbor's policy because of indorsement 110 adding Macco-Lusk, then Harbor and Ohio became coinsurers and operation of the "other insurance" clause in Harbor's policy would follow. Although California has adopted an aggregate theory of partnership, in special instances the entity theory is invoked. In *National Auto Ins. Co.* v. *Industrial Acc. Com.*, 11 Cal.2d 694 [81 P.2d 928], partnerships were deemed insurable as entities. Additionally, some of the partners were named insureds together with the partnership entity. The court held only those parties so named were afforded *individual* coverage. (Cf. *California Comp. & Fire Co.* v. *Industrial Acc. Com.*, 62 Cal.2d 532, 536-537 [42 Cal.Rptr. 845, 399 P.2d 381], [dealing with coverage of partners as *members* of a partnership entity].) Partnership law is applicable to joint ventures. (*Orlopp* v. *Willardson Co.*, 232 Cal.App.2d 750, 754 [43 Cal.Rptr. 125]; *Close-Smith* v. *Conley*, 230 F.Supp. 411, 423.)

*United Pac. Ins. Co.* v. *Ohio Cas. Ins. Co.*, 172 F.2d 836, parallels the present case. Gilbert, an employee of Pacific

Laundry, a California partnership, negligently drove a truck during the course of his employment and injured Echols. Page, owner of the truck which had been leased to Pacific, was a partner in Pacific and also owned Mission Linen and Towel Supply, a California business. Ohio insured Pacific as an entity and United insured Page, both individually and dba Mission. United's policy concededly provided coverage of Gilbert as the driver of Page's truck. The issue presented was whether Ohio's policy also covered Gilbert individually by virtue of his employment relationship with Pacific, thereby creating an obligation in Ohio to contribute to the indemnity and defense of Gilbert. United sought declaratory relief against Ohio in the U.S. District Court, Central Division of the Southern District of California. The court states at pp. 842-845: ''Ohio relies on the terms of its Pacific policy . . . intentionally and deliberately fashioned (and sold to and bought by Pacific) for the express and definite purpose of excluding an employee like Gilbert and was designed to protect and insure *only* a *partnership entity* called Pacific against a liability claim . . . asserted . . . under the doctrine of respondeat superior. . . .

''Ohio concedes that it is obligated under its policy to defend Pacific in the Echols' suit but asserts that in so doing it defends only the *partnership entity* (Pacific) which is specified in its policy as the *named assured,* and that it is not called upon to tender a defense to Gilbert for his personal neligence since it did not insure Gilbert . . . United argues that since California holds to the aggregate theory of partnerships, . . . there can be no such thing as a *partnership entity* which can be insured separately and apart from the members composing the partnership. . . .

''. . . . . . . . . . . . . .

''. . . Ohio contends to the contrary. It argues that *for insurance purposes* the parties to a contract of insurance *may recognize a partnership entity* and thus segregate one risk from another. . . .

''. . . . . . . . . . . . . .

''We think that the Ohio-Pacific policy comes squarely within the principle announced in these cases [*National Auto. Ins. Co.* v. *Industrial Acc. Com., supra,* 11 Cal.2d 694] and that the policy limits the liability of Ohio to the *named assured.* . . .

''. . . . . . . . . . . . . .

"We agree with Ohio that this case involves no problem of prorating insurance but rather presents the question of who carries the insurance on the ultimately liable single tort feasor—Gilbert."

In the instant case the language of Ohio's policy names only Eastbluff, the language of Harbor's names only Jamboree and Macco-Lusk. The intent of the venturers as expressed in the record and in their respective insurance contracts, was that Harbor would undertake coverage for Jamboree and Macco-Lusk only, excluding Eastbluff. Eastbluff did not thereby become an additional insured and consequently there is no coinsurance. It is true that Eastbluff and Jamboree are jointly and severally liable as joint venturers for claims arising from activities of the adventure. But, the individual risks of each venturer and of the joint venture as an entity were segregated and independently insured.

Debts of a partnership must be first discharged from partnership property before any distribution may be made to a partner. (*Chase* v. *Steel,* 9 Cal. 64, 66.) Also, creditors of the partnership have priority as to partnership assets over the creditors of the individual partners. (*Burpee* v. *Bunn,* 22 Cal. 194, 198-199.) Corporation Code, section 15018, subdivision (b) provides: "The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property." It follows that in satisfying some partnership obligation, where both the partnership entity and individual partners have been joined, assets of the partnership should be first exhausted. Harbor's policy covering Macco-Lusk, the joint venture, became a joint venture asset; the Ohio policy covering Eastbluff separately was an asset of Lusk alone. The judgment declaring Ohio's right to recoup its contribution to the Macco-Lusk settlement should be affirmed, unless Ohio became a volunteer by the very act of contributing.

Harbor cites authority for the proposition that where two insurers cover the same risk as coinsurers, neither can recover an amount paid in excess of its proper share from the other. As to the excess payment, the coinsurer is a volunteer. (*American Auto Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal. App.2d 192, 199 [318 P.2d 84] ; *Fidelity etc. Co.* v. *Fireman's Fund Indem., supra,* 38 Cal.App.2d 1, 6.) Harbor argues that Ohio, professing to have no indemnity obligation, became a

volunteer, by its own contention, upon paying one-sixth toward the Macco-Lusk settlement. The apparent reason for the rule, to safeguard one coinsurer from becoming obligated by reason of the unilateral settlement of another coinsurer, is not applicable to the facts in the instant case.

In any event, circumstances surrounding the instant case do not indicate ''voluntariness'' on Ohio's part. An analogous case is *National Surety Corp.* v. *Western Fire & Indem. Co.,* 318 F.2d 379, wherein two insurers, worried over the cost and possible results of a contributory negligence defense to a personal injury action, effected a $30,000 settlement. The insurers entered into a written agreement setting forth that one had demanded a defense from the other and that bona fide questions as to their respective rights and obligations existed, each party expressly reserving their rights. The court said at pp. 385-386: ''We are of the opinion that . . . , the payment of $30,000 by National and Western was not voluntary, but impelled by their good faith belief that they should not risk the danger of a much greater recovery by Tyler by contesting his action to final judgment.

''We conclude that under such agreement it was the intent of National and Western that the liability of Cooper to Tyler for $30,000 should be taken as established for the purpose of *thereafter determining as between themselves the extent of the obligation of each* under its respective policy to discharge such liability and the *right of each to recover from the other any amount of such $30,000 paid by it, which the other under its policy should have paid.''* (Italics added.)

The only difference in the case at bench is the absence of written agreement. In *Hanover Ins. Co.* v. *Travelers Ins. Co.,* 355 F.2d 552, a waiver of any claim between coinsurers after settlement was found where: ''. . . there was *no intimation* that any right by Hanover was reserved as a condition of its $15,000 payment.'' (Italics added.) But, written agreement seems unnecessary to preserve existing rights when the circumstances manifest such an intent to all parties. Recognizing the case as one of first impression, the court in *National Surety Corp.* v. *Western Fire & Indem. Co., supra,* at p. 385, stated: ''Therefore, we must endeavor to ascertain, with little help from adjudicated cases, the *intent* of National and Western, . . . from the language of the agreement and the *surrounding facts and circumstances.''* (Italics added.)

There is overwhelming evidence that Ohio did not intend to waive any of its rights against Harbor and that Harbor so

understood: (a) Ohio made continuing demands upon Harbor to provide a defense for Eastbluff against the Western claim; (b) Ohio refused to terminate its declaratory relief action in negotiating the Western settlement; (c) the declaratory relief action was pending throughout the period of settlement negotiations; (d) Harbor and Ohio agreed the purpose of settlement was to avoid potentially large defense costs in a losing cause, thereby benefiting each insurer.

It cannot be said the trial court erred in finding Ohio did not intend to volunteer and Harbor so understood. The law does not require a writing to preserve rights between insurers when intent to do so is manifest from the surrounding circumstances and conduct of the parties.

 Although a coinsurer may be required to share in the costs of defense (*Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, 37 [17 Cal.Rptr. 12, 366 P.2d 455]; *Meritplan Ins. Co.* v. *Universal Underwriters Ins. Co.,* 247 Cal.App.2d 451, 464-465 [55 Cal.Rptr. 561]), the doctrine of equitable subrogation on which such obligation is based does not apply unless both insurers cover the same risk. (*Utica Mut. Ins. Co.* v. *Monarch Ins. Co. of Ohio,* 250 Cal.App.2d 538, 544 [58 Cal. Rptr. 639].) We have concluded that Harbor and Ohio are *not coinsurers* since each indemnifies distinctly separate insurable interests. No obligation to share expenditures for defense can arise merely by virtue of their position as insurers.

A special situation does exist regarding reimbursement paid to the members of partnerships and joint ventures for costs incurred pursuant to partnership or adventure business. (Corp. Code, § 15018, subd. (b), *supra.*) If Eastbluff had financed its own defense against the Western claim, the joint venture would be obligated to reimburse Eastbluff. Arguably, Harbor, as insurer of the adventure, might then be ultimately liable to Eastbluff for such expenditures.

 Ohio's expenditures in the Western action arose solely from defending its own insured, Eastbluff, not from aiding Harbor's insureds, Jamboree and Macco-Lusk. The duty to assume the defense of its separate insured is within the contract obligation contemplated by Ohio. There is no reason to suppose that Ohio, if it were to recover defense expenditures from Harbor, would in turn reimburse Eastbluff directly or by paring premium charges. (Cf. *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* [Public policy favors the insured's receiving an effective defense and avoiding possible

windfall advantage to the insurer].) The right of a venturer to reimbursement by the joint venture under Corporations Code, section 15018 subdivision (b), *supra,* does not extend to his insurer.

The judgment is affirmed with regard to Ohio's right to recoup its settlement contribution and reversed with regard to Harbor's obligation to pay costs and attorney's fees in both the Western suit and the present action. Each party is to bear his own costs, expenses and fees on this appeal. The trial court is directed to enter judgment accordingly.

Kerrigan, J., concurred.

A petition for a rehearing was denied March 12, 1968, and the petition of appellant Harbor Insurance Co. for a hearing by the Supreme Court was denied April 17, 1968.