The CONTINENTAL INSURANCE COMPANY OF NEW YORK, New York, a corporation, Appellant,

v.

Richard B. COTTEN et al., Appellees.

No. 22907.

United States Court of Appeals, Ninth Circuit.

May 22, 1970.

Jerome F. Downs (argued), of Thornton & Taylor, San Francisco, Cal., for appellant.

H. C. Mack, Jr. (argued), of Mack, Bianco & Means, Bakersfield, Cal., for appellees.

Before CHAMBERS and BROWNING, Circuit Judges, and THOMPSON, District Judge.*

CHAMBERS, Circuit Judge:

On January 27, 1966, a house at 924 Oleander Avenue, Bakersfield, Califor-

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

nia, burned down. It was occupied by Mrs. Peggy Lawrence under a lease (badly in default) which contained an option to purchase for $25,000. The property was subject to a California security deed of trust in the face amount of $23,500. This had been executed by Richard B. Cotten and Madelyn M. Cotten, record owners of the property and lessors of Mrs. Lawrence. The Cottens are among the plaintiffs-appellees herein. The deed of trust names Kern County Title Company as trustee and Lloyd L. Roe, M. Laurene Roe, Wendell H. Russell, Lorna E. Russell, LaMontie Vest and Audrey Vest as beneficiaries. (The six beneficiaries are also among the plaintiffs and appellees herein.) Lloyd Roe, Mrs. Russell and Mrs. Vest are children of Mabel P. B. Roe, a Bakersfield widow and a central figure in this case, who was never joined as a party.

In 1960, Mabel Roe, then 80 years of age, had been the seller to Cotten. At that time, she was the owner of the property encumbered by a balance under a first trust deed placed thereon by a former owner, Glasser.[1] It was she who dictated that the bulk of the consideration be represented by the trust deed in favor of her children and their spouses. (This was a pattern she had used with respect to many of the items of her extensive assets.) Although the children may have known of her general pattern, they had no knowledge that they were beneficiaries of the trust deed on the Cotten-Lawrence house. For example, LaMontie Vest, a key figure herein, never knew about it. Cotten's payments, like those of Mrs. Lawrence, were raggedly intermittent. Generally the balance due on the trust deed's note was always going up. Strangely, all payments seem to have been made to Mrs.

Mabel Roe. She appears to have kept those that were made, treating them as her own. More often than not, she herself was paying the real property taxes and fire insurance which Cotten and Mrs. Lawrence had failed to pay. But the record indicates no default was ever declared.

Mrs. Mabel Roe seems to have been both a real estate broker and a dealer and investor for her own account in residential properties and residential mortgages. She had an office in Bakersfield which she shared with her son-in-law, LaMontie Vest. In 1965 and 1966, Vest was a licensed real estate broker. Until about 1965, he had been a licensed insurance agent.

He had been prior to October, 1965, an agent for the Travelers Insurance Company, but he lost his agency and did not renew his insurance agency license. But he continued to produce some insurance business, which he placed with Robert J. Newell of Bakersfield, an agent for the defendant-appellant, Continental. Newell would share his commissions with Vest, if the latter produced a piece of business. Apparently Mrs. Mabel Roe, Vest's office associate, was his (Vest's) best insurance customer. (It is not clear that Mrs. Mabel Roe and Vest were partners, but in his testimony Vest refers to the Roe-Vest office and to both mother-in-law and son-in-law using the same files.)

In October, 1965, Mrs. M. Roe asked Vest to take care of new insurance on the Cotten-Lawrence property. At this point, it seems clear that the Cottens had left California.

█ Vest ordered a policy from Newell (to replace a policy written by Travelers). It was issued by Newell as of October 19, 1965, in the amount of

---

1. Apparently Mrs. Roe's first connection with the property was pre-Cottens when she took in her name a second deed of trust on the Oleander Street property from parties named Stream. This she assigned to her family corporation, the Russell Roe Company. When others did not make the payments on the trust deed assigned to Roe, which was usually the case, she made the payments. By the time of the fire she had just finished paying off both trust deeds (which deeds she had never mentioned in her deed to Cotten).

$15,000 in the Continental Insurance Company, defendant-appellant herein. In compliance with Vest's instructions to Continental, the policy named Peggy Lawrence as the insured and Mrs. M. P. Roe as the loss payee. The policy was given to Vest. Mrs. Roe paid for it and Vest shared the seller's commission. Under the circumstances Mrs. Roe knew of the contents of the policy. It is doubtful if Mrs. Lawrence or the Cottens ever knew of the insurance before the time of the fire. After leasing with option to buy to Mrs. Lawrence, the Cottens left the state of California. There are some earmarks of abandonment by the Cottens of their interest, but we cannot say that they had done so. And, of course, they were liable under the note and deed of trust they had put on the property at the direction of Mrs. Roe for her children. The Cottens had an insurable interest and we assume that Mrs. Lawrence did, too.

It should be noted that in 1962 Vest had written for Mrs. Roe a three-year insurance policy in Travelers on the property showing the Cottens as the insured and Mrs. Roe as mortgagee.

After the fire, Continental declined to pay. The Cottens, the Lloyd Roes, the Russells and the Vests sued Continental in a California state court. Removal on the ground of diversity of citizenship to the Eastern District of California followed. The plaintiff-appellees' requested relief was that the insurance policy be reformed to name as insureds Richard B. Cotten and Madelyn M. Cotten, and to name as loss payees under the mortgage clause of the policy, Lloyd L. Roe, M. Laurene Roe, Wendell H. Russell, Lorna E. Russell, LaMontie Vest and Audrey Vest.

■ At the threshold of this case is the jurisdictional question of whether all of the necessary parties have been joined. Neither of the parties raised the jurisdictional question but it is the duty of a federal court to enforce jurisdictional requirements where a defect is apparent even though its jurisdiction

has not been challenged. At the request of this court, both parties submitted supplemental briefs addressed to the question of whether Peggy Lawrence and Mrs. M. P. Roe are necessary parties to this cause. Appellant and appellees both urge that Peggy Lawrence and Mrs. M. P. Roe are not necessary parties. The rationale is that Peggy Lawrence has lost any rights she might have had under the policy because she did not make a claim and that Mrs. Roe has disclaimed any interest in the policy because of her testimony that she gave her interest in the Cotten deed of trust to her children and their spouses. Appellees submit that reversal for a new trial because of jurisdictional defects would not change the posture of the case.

■■ Considering the requirements of Federal Rule of Civil Procedure 19 and the arguments of the parties, we conclude that Mrs. M. P. Roe and Peggy Lawrence are not necessary (indispensable) parties (they would have been proper parties) and that the district court properly exercised jurisdiction. The main point is that it appears unlikely that either absentee would be adversely affected in a practical sense. An additional factor is defendant-appellant's failure to object to non-joinder at trial. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (at the appellate stage there is reason not to throw away a judgment just because it did not theoretically settle the whole controversy).

The district court held that plaintiff-appellees had an insurable interest and were entitled to reformation as requested and recovery pursuant to the policy because "defendant intended to insure the dwelling at 924 Oleander Ave. in Bakersfield, California; there was no fraud or misrepresentation on the part of the insured; there was no increase of hazard because of the error in the name of the loss payee; and the defendant accepted and retained the premiums."

■ The general principles applicable to reformation of contracts are applicable

to insurance contracts. See generally, Annot. 1 A.L.R.3d 885; 25 A.L.R.3d 580; 26 A.L.R.3d 6. Applying contract principles, California courts have allowed reformation of insurance contracts in a number of situations. Where an applicant for an insurance policy correctly informs the agent of the interest to be protected and, because of the agent's mistake, the interest or name of the insured is incorrectly stated, California courts have allowed reformation. American Surety Co. v. Heise, 136 Cal.App.2d 689, 289 P.2d 103; Bass v. Farmers Mutual Protective Fire Ins. Co., 21 Cal.App.2d 21, 68 P.2d 302; Beach v. United States Fidelity & Guaranty Co., 205 Cal.App.2d 409, 23 Cal.Rptr. 73: An agent's erroneous representation of insurance coverage also may be the basis for reformation. Cantlay v. Olds & Stoller Inter-Exchange, 119 Cal.App. 605, 7 P.2d 395.

■■■ A basic proposition in cases allowing reformation because of an agent's mistake is that he was mistaken about the applicant's objectively expressed intent concerning the vital elements of the policy. The case on appeal differs from California cases allowing reformation because here the applicant (Mrs. M. P. Roe) did not supply the insurance agent (Vest) with information concerning the persons or interests to be insured. Without such communication of intent, it is impossible to ascertain in which respect the agent was mistaken. Mrs. Roe's intent regarding the insured interests under the policy is not discoverable because she apparently had no intent other than that the property should be insured. It is axiomatic that a court cannot reform and remake a contract where there was never any common intent. Milwaukee Mechanics' Ins. Co. v. Palatine Ins. Co., 128 Cal. 71, 60 P. 518;

National Auto Ins. Co. v. Industrial Accident Comm., 27 Cal.App.2d 225, 80 P.2d 1024. At best, the evidence of mistake here is not the clear and convincing evidence necessary to overcome the presumption arising from the terms of the instrument that it correctly expresses the intention of the parties.[2]

■■ An examination of Vest's legal relationship to Mrs. Roe and his assumptions about the insurable interests in the property further demonstrates the impropriety of reformation. The district judge found that Vest was employed by the Newell Insurance Agency as a soliciting agent. This factual conclusion is not clearly incorrect. In determining when a principal is bound by the error of his agent, the California courts have not distinguished between general agents and soliciting agents. Hart v. Prudential Ins. Co., 47 Cal.App.2d 298, 117 P.2d 930. Appellant argues that Vest was acting as an insurance broker at Mrs. Roe's request and that, therefore, his mistake or knowledge is not imputed to the insurer. However, we conclude that Vest was a dual agent acting both for the Newell agency and for Mrs. Roe. Vest's mistakes, if any, in carrying out duties owed to Mrs. Roe as her agent are not necessarily imputable to the insurance agency for which he was acting as a soliciting agent. California courts recognize that an insurance agent must accurately carry out an applicant's request and that reformation may be allowed where the agent knowingly inserted false statements in the insurance application. See Annot., 26 A.L.R.3d 6. However, the instant situation is not one of fraud, deliberate insertion of false answers or misstatement of facts or intent communicated by the applicant. The relevant California cases do not disclose a judicial

---

2. Both parties cite Gillis v. Sun Insurance Office, Ltd., 238 Cal.App.2d 408, 47 Cal. Rptr. 868, and appellees rely heavily on it. One simply cannot be certain of the facts there, and even after we have obtained the underlying record we cannot be sure of the basis of the court's holding. If it stands for the proposition that someone must be paid for every loss in California if the property is correctly described in the policy, it then runs contrary to other California authority cited infra. California has never held that a fire insurance policy is appurtenant to the insured property.

intent to require an insurance company to undertake an investigation to discover all types of interests in the subject property on pain of being held to have made a mistake if it failed to discover the hidden interests.

 Taking a hindsight view, appellees charge Vest, and thus appellant, with a mistake in failing to insure their interest in the property and claim a right to reform the contract to conform to the mutual intent of the parties. Vest made a mistake of law as to the significance of the Cottens' insurable interest. (But the trust deed balance far exceeded the amount of the policy. Thus, the Cottens could have no beneficial interest in the proceeds of the policy.)[3] Also, he was unaware of the interest of the Roes, Russells, and Vests (children of Mrs. M. P. Roe and their spouses) as beneficiaries under the Cotton deed of trust. The fallacy of finding a contractual intent to insure the interest of the trust deed beneficiaries is demonstrated by the fact that Vest was ignorant of their interests and thus could not have intended to act upon their behalf. Although Mrs. Roe may have had a subjective intent to insure the interest of the trust deed beneficiaries, she never communicated that intent. Without an objective manifestation of mutual intent to insure the interest of the trust deed beneficiaries by making them loss payees, there is no mutual agreement that a reformation could express.

This case is a typical instance of what one would have done if he had thought. Mrs. Roe's mistake was in failing to indicate her intent or provide necessary information on the interests to be insured. If she did not receive the policy she desired, the mistake is not attributable to appellant. Since fraud and mutual mistake are absent in this case, reformation was improper.

3. The Cottens could not recover under the policy as originally written (Peggy Lawrence—named insured; M. P. Roe—loss payee) because they are not insureds or loss payees under the policy. Neither should they have the policy reformed to

It seems apparent, in her giving away and still really keeping her assets, Mrs. Roe was trying to avoid probate and perhaps death duties. This is fine if one works it right, but Mrs. Roe simply enmeshed herself in her own web and Continental, we hold, is not obligated to bail the children out of her mistake.

Reversed.

make them the named insureds. They paid nothing for the policy. They ordered nothing. Vest was not acting as their agent in the purchase of the policy here in suit.