[Civ. No. 58161. Second Dist., Div. Five. July 28, 1981.]

AMERICAN HOME INSURANCE COMPANY, Plaintiff and Appellant, v.
TRAVELERS INDEMNITY COMPANY, Defendant and Respondent.

952

COUNSEL

Hiestand & Brandt, Frank W. Woodhead and Arthur E. Schwimmer for Plaintiff and Appellant.

Martin & Stamp and Ivan K. Stevenson for Defendant and Respondent.

OPINION

STEPHENS, Acting P. J.—Plaintiff and appellant, American Home Insurance Company (American), appeals from a judgment dismissing its first amended complaint for reformation and declaratory relief. The order of dismissal was entered after the trial court sustained the demurrer of defendant and respondent, Travelers Indemnity Company (Travelers), without leave to amend. American contends that one of its assured was omitted from an insurance policy issued by Travelers to Mort Davis Company (Davis) through the mistake of the contracting

parties. Appellant argues that the parties' actual intention will be expressed only if the allegedly omitted entity is named an additional insured to the Travelers-Davis policy. The issue before this court is whether American has standing to seek the reformation of an insurance contract between Travelers and Davis.

American and Travelers are liability insurers authorized to transact business in California. Appellant in this case issued a policy covering Toyota Motor Company, Ltd., Toyota Motor Sales U.S.A., Inc. (Sales), and Toyota Motor Distributors, Inc. (Distributors). Both Sales and Distributors are California corporations and subsidiaries of Toyota Motor Company. The term of the insurance contract covering the three Toyota entities was from October 1, 1974, to October 1, 1975.

The policy provisions indicate that American agreed to pay all sums for which the Toyota insureds became liable by reason of the destruction or injury to property owned by others, and arising from the operations of the Toyota entities. Appellant also contracted to provide a defense to any suit against the Toyota parent corporation, or either of its California subsidiaries, resulting from such property destruction or injury.

The functions of the Toyota companies distinguish their insurable interests. Toyota Motor Company manufactures automobiles in Japan. Title to these vehicles passes to Sales after sailing from Nagoya, Japan. Sales is the subsidiary corporation responsible for the automobiles during their transport to Long Beach, California. When the shipping vessels are docked at the marine terminal in Long Beach, title to the vehicles then passes from Sales to Distributors. This Toyota subsidiary prepares the automobiles for distribution to various dealer outlets. All of the stock in Distributors was owned by Sales. Furthermore, the two Toyota subsidiaries had the same directors and executive officers.

Travelers insures Davis, a California corporation which maintained and prepared Toyota automobiles for distribution from Long Beach to the dealers. The insurance contract between respondent Travelers and Davis covered the period from October 1, 1974, to October 1, 1975. Under the terms of this policy, Travelers agreed to pay all sums for which Davis became liable by reason of the destruction or injury to property owned by others, and arising from its operations. Respondent Travelers also contracted to defend any suit against Davis resulting from such claims.

Davis entered into a "processing contract" with Distributors on February 4, 1972. The terms of the contract are of special significance to this appeal. Davis agreed to maintain "comprehensive general liability insurance" for *Distributors*, and contracted to name *Distributors* as an "additional insured" to its policy with Travelers.[1]

In addition to the insurance provision, the processing contract contained an indemnity clause. Under this term, Davis agreed that Distributors would be "held harmless" and indemnified for any claims, litigation costs, and expenses relating to any injuries or property damage arising from the "maintenance, repair, use, or processing" of all Toyota vehicles while they were in the custody of the processor. The contract expressly covers property damage incurred by Distributors, but no reference is made to any coverage afforded to Sales.

Pursuant to the terms of the processing contract, Travelers named Distributors as an "additional insured" to its "Garage Liability Policy" covering Davis. The insurance contract between Travelers and Davis designated only Distributors as the added Toyota entity.

The insurance contract appears to restate the intentions of the parties to the processing agreement. Distributors is clearly identified as the additional insured. The location of the processing activities performed by Davis for Distributors is correctly described. However, the problem in this case emerges from a designation in the "additional insured endorsement provision."

The designated premises in the insurance contract are defined as the "part leased to named insured." Davis is the named insured under the Travelers policy, but the automobile processor would more accurately be described as "a sublessee or licensee" of the premises. The Toyota entity leasing the property designated in the Travelers policy was Sales.[2]

---

[1]The agreement clearly identifies Toyota Motor Distributors as the contracting Toyota entity. For purposes of brevity, the contract designates that Toyota Motor Distributors will "hereinafter be referred to as TOYOTA," while the Mort Davis Company is subsequently identified as the "PROCESSOR." While these descriptions were intended for an expeditious contract, the "TOYOTA" reference became an object for plaintiff's assertion of "mutual mistake."

[2]Travelers issued the indorsement provision on September 26, 1974. Respondent added Toyota Motor Distributors as a named insured to its "Garage Liability Policy" covering Davis from October 1, 1974, to October 1, 1975. The coverage declaration in

Toyota Motor Sales entered a written lease with the City of Long Beach for the aforementioned location. The leasing arrangement called for a term of 10 years (from Jan. 1, 1970, to Jan. 1, 1980). Sales also made a "Preferential Assignment Agreement" with Long Beach on February 21, 1974. Under this agreement, the city permitted Sales to use certain buildings and improvements on the leased premises for the operation of a marine terminal during the next 10 years.

On July 30, 1975, a fire occurred at the premises leased by Sales from the City of Long Beach. The blaze burned a repair building, machinery and equipment within the building, and four Toyota automobiles. As a result of this fire, the City of Long Beach filed a complaint for property damage on July 14, 1977. Toyota Motor Sales, Toyota Motor Distributors and Mort Davis Company are among defendants in this action. The city sought recovery for the damages to its leased premises and structures identified in the "Preferential Assignment Agreement" with Sales.[3]

On July 28, 1977, Davis brought an action against Sales, seeking to recover for the damages it suffered from the fire.[4] Copies of the summons and complaint in each tort action were served on Sales on September 20, 1977. The corporation forwarded these documents to American, requesting that appellant provide a defense in both actions. As the lessee, Sales was charged with responsibility for the burned premises in each suit.

American discovered the alleged "mistakes" in the processing contract and Travelers policy upon receipt of process from Sales. Appellant

---

the indorsement was entered under the category "ADDITIONAL INSURED (PREMISES LEASED TO THE NAMED INSURED)."

Davis performed its processing activities at the location listed as the "Part Leased to Names Insured." On appeal American describes the premises as being leased to Davis, but alleges that the automobile processor was, in substance, "a sublessee or licensee" of Toyota Motor Sales.

[3]Toyota Motor Company and Mort Davis, in his individual capacity, were also named defendants in the Long Beach action (Civ. No. 206252). The city sought approximately $75,000 in damages, along with prejudgment interest. Among its allegations, the complaint charged Sales with breaching the lease and preferential assignment.

[4]Davis alleged damages of approximately $25,000 for its machinery, materials, and supplies which burned in the leased buildings, and an additional $15,000 in losses incurred through the interruption of its business (Civ. No. 47171). Davis' complaint contained charges of strict liability, negligence, and breach of warranty against Sales.

contends that Davis and Travelers actually intended to insure the Toyota entity responsible for the property designated in the "additional insured endorsement provision." American alleges that through the mistake of the parties to the processing contract and insurance agreement, the policy refers only to Distributors as an additional insured.

Although not specifically alleged in its first amended complaint, American contends on appeal that "no separate agreement" existed between Davis and any of the Toyota entities regarding occupation of the leased premises. Appellant asserts that the absence of a separate agreement further evidences the parties' purported mistake in failing to insure the actual lessee, Toyota Motor Sales.

The American and Travelers insurance policies were both in effect at the time of the fire. The aggregate limits of each policy for property damage adequately covered the combined claims in the Long Beach and Mort Davis actions.[5] In spite of its stated coverage, American demanded that Travelers defend both Toyota Motor Distributors and Toyota Motor Sales in the Long Beach action. Appellant also insisted that Travelers defend Sales in the Mort Davis litigation, and indemnify either Toyota corporation should liability be adversely determined in either action. Travelers refused appellant's demand, and American commenced this suit for reformation and declaratory relief.

In its first amended complaint, American seeks the reformation of the insurance contract between Travelers and Davis. Appellant argues that naming Sales as an additional insured to the Travelers policy will correct the alleged mistake of the contracting parties and express their "true intent."

American also requests a declaration that Travelers has the primary duty to defend Distributors and Sales in the pending tort actions, and indemnify either in the event of loss. In the alternative, appellant seeks a determination that any losses and expenses incurred in the aforementioned actions are to be allocated between the insurers in accordance with the ratio each policy limit bears to the total insurance coverage.[6]

[5]American's policy covering the Toyota insureds has an aggregate limit of $275,000 for property damage. Travelers' policy with Davis has an aggregate limit of $1 million for property damage.

[6]Appellant's alternative formula would allocate any loss and expense between the insurers in the ratio which $275,000 bears to $1,275,000, or 22 percent to 78 percent, with the larger share borne by respondent.

The issue to be resolved is appellant's standing to assert these equities against respondent.

The trial court sustained Travelers' demurrer to American's first amended complaint on three grounds. This court will assess only appellant's failure to "state facts sufficient to constitute a cause of action," because American's standing to seek the requested relief is dispositive to the underlying dismissal.[7] "The applicable pleading rules are familiar. A judgment based on an order sustaining a general demurrer must be affirmed if any one of the several grounds of demurrer is well taken. [Citations.] On the other hand, any particular count which is well pleaded will not be affected by defects in a separate cause of action, so long as inconsistent or antagonistic facts are not pled. [Citations.] The complaint must be liberally construed and survives a general demurrer insofar as it states, however inartfully, *facts disclosing some right to relief.* [Citations.]" (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21-22 [157 Cal.Rptr. 706, 598 P.2d 866]. Italics added.)

"Preliminarily, we observe that we are limited on this appeal to a determination of the sufficiency of the complaint as a matter of law and that for such purpose we treat the demurrer as admitting all allegations of material facts properly pleaded but not admitting contentions, deductions, or conclusions of fact or law. [Citations.]" (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 734 [108 Cal. Rptr. 845, 511 P.2d 1197].) In its first amended complaint, American offers only the mere conclusion that it was the "obvious and actual intent" of Davis and Travelers to enter the processing contract and insurance agreement with Sales—the Toyota entity responsible for the leased premises in Long Beach.

The plaintiff's conclusion is contrary to the express terms of the processing contract and "additional insured endorsement provision," which were pleaded in full and made parts of the first amended complaint. The two instruments are the only factual indications of Davis' and Travelers' intent in plaintiff's pleadings. The processing contract demonstrates the parties' intent to add only Distributors to Davis' policy

---

[7]The trial court judge below entered the order of dismissal on August 24, 1979, citing grounds stated in Travelers' demurrer (Civ. No. 281840). The trial court agreed with defendant's objection that American's first amended complaint did not state facts sufficient to constitute a cause of action, as plaintiff lacked standing to seek either reformation of the Travelers-Davis insurance contract or a declaration of rights thereunder. (Code Civ. Proc., § 430.10, subd. (e).)

Critical to this appeal was the trial court's determination that American was neither a party to, nor an intended beneficiary of, the insurance contract between defendant

with Travelers, and American alleges no facts to show a "necessary prior agreement," written or oral, among the contracting parties to insure Sales. (*Lane* v. *Davis* (1959) 172 Cal.App.2d 302, 310 [342 P.d 267].)

In order for American to obtain reformation there must be an understanding between the parties on all essential terms regarding coverage for Sales, otherwise there would be no standard to which Travelers' policy could be reformed. (*Lane* v. *Davis, supra*, 172 Cal.App.2d 302, 309.) Viewing the first amended complaint most favorably to American, it was nowhere alleged that Davis and Distributors, or Davis and Travelers, actually agreed to insure Sales. In examining the parties' intent in the processing contract which underlies Travelers' policy, "we are not bound to accept plaintiff's conclusionary, ineffectual or improperly pleaded allegations. [Citations.]" (*Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 121 [137 Cal.Rptr. 239].)

Civil Code section 3399 sets forth the statutory guidelines for reformation of a written contract.[8] ▪ As applied to this case, the principal prerequisite is the demonstration of a mistake which results in the failure of a written contract to express the true intention of the parties to the agreement. This mistake may be the mutual error of both parties to the contract, or the oversight of one party which the other knew or suspected at the time of entering the agreement. The party seeking the revision of the writing must show how it is "aggrieved" by the mistake, and define the actual intention of the contracting parties. "The general principles applicable to reformation of contracts are applicable to insurance contracts. [Citations.]" (*Continental Insurance Co. of New York* v. *Cotten* (9th Cir. 1970) 427 F.2d 48, 51-52.)

---

and Davis. The trial court refused to acknowledge any legal relationship alleged by plaintiff which would make it an "aggrieved party" to the contractual arrangement herein.

The demurrer was also sustained on the ground that plaintiff's first cause of action, seeking reformation on the basis of the contracting parties' alleged mistake, was barred by the three-year limitation period in Code of Civil Procedure section 338, subdivision 4. Finally, the trial court accepted defendant's assertion that the first and second causes of action failed to join indispensable parties. (Code Civ. Proc., § 430.10, subd. (d).)

[8]Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

■ American alleges that it is an "aggrieved party" to the insurance contract between Travelers and Davis by reason of the purported omission of Toyota Motor Sales as an "additional insured." As Sales' insurer, appellant is providing a defense for the Toyota entity in two pending tort actions. Appellant contends that but for an oversight by the contracting parties, Sales would be a named insured to Travelers' policy covering Davis and Distributors, with Travelers defending the omitted entity in these actions. In effect, American is asserting any rights which its assured, Sales, may have in the Travelers-Davis insurance contract.

It is apparent from the facts that American was neither a contracting party nor an intended beneficiary of Travelers' written agreement with Davis. More importantly, Sales was not a party to either the insurance contract or the underlying processing agreement between Davis and Distributors. Therefore, in seeking reformation, it is incumbent upon American to show that Sales was an intended beneficiary of the Travelers-Davis contract. Because appellant is "standing in Sales' shoes," the alleged intent to cover that Toyota entity is a threshold determination in assessing American's standing. ■ "A person who has no present interest in the policy cannot obtain its reformation." (17 Couch on Insurance (2d ed. 1967) § 66:129, p. 353.)

Appellant alleges standing to seek reformation of the insurance contract as "subrogee" of the Toyota companies. As discussed below, American may be a subrogee as to its costs for defending Distributors in a pending tort action, but this argument fails with regard to Sales. Before appellant may invoke the equitable doctrine of subrogation, an underlying obligation between Travelers and Sales must first be established. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 101, pp. 1776-1777.) Any alleged obligation necessarily requires a determination that Sales was an intended beneficiary of the Travelers-Davis insurance contract.

In this case, reformation requires a two-tiered analysis. Initially, the language in the insurance policy must be factually distinguished with regard to the premises "leased to the named insured." This discussion leads naturally to the second level of analysis involving the processing contract between Davis and Distributors. The linchpin in this contractual arrangement is Sales' status as a possible third party beneficiary.

Appellant argues that the "additional insured endorsement provision" indicates the parties' intent to make Sales a named insured to Travelers' policy. This argument is tenuous at best. Admittedly, Sales leased the premises designated in the coverage declaration from the City of Long Beach. However, appellant's argument ignores its own concession that Davis was the "sublessee or licensee" of Sales (see fn. 2, *ante*). If Davis was, in fact, the sublessee of the premises, the description of the corporation's legal status as occupant was sufficient. Even if the automobile processor was a mere licensee, the description of the premises as the "part leased to named insured" is not sufficient to warrant the reformation of the insurance contract. In either case, the designation served only to identify the location where the named insured under the Travelers policy (Davis) performed its processing activities. The intent of Travelers and Davis to name only Distributors as an additional insured clearly appears on the face of the coverage declaration.

The written processing contract between Davis and Distributors was the antecedent agreement from which respondent prepared the "additional insured endorsement provision." Davis' intent to add only Distributors to its "Garage Liability Policy" is apparent from the terms of this agreement.

The contractual relationship of these parties further demonstrates the nature of their insurance arrangement. As indicated above, Distributors was the Toyota corporation responsible for preparing the automobiles for delivery to various outlets. Davis helped discharge this responsibility by contracting with Distributors to repair, wash, and maintain the Toyota vehicles while they were located at the leased facilities in Long Beach. Distributors held title to the automobiles at the Long Beach location, and Davis agreed to insure it against any property damage resulting from the processing activities. While Davis contracted to indemnify Distributors against such losses or claims, there was no reference in the processing contract to insuring Sales' interest in the leased premises, or to indemnifying Sales for any property damage.

■ The purpose of reformation is to make a written contract truly express the intention of the parties. This language refers to "a single intention" entertained by both parties. (*Shupe* v. *Nelson* (1967) 254 Cal. App.2d 693, 700 [62 Cal.Rptr. 352].) "Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral [citation]." (*Ibid.*)

■ It is a longstanding principle that judicial acceptance of an attempt to substitute new parties to an insurance policy, where there is no underlying agreement to that effect, amounts to the court's making a new contract. (*Cantlay v. Olds & Stoller Inter-Exchange* (1932) 119 Cal.App. 605, 614 [7 P.2d 395].) In order to reform the insurance contract, American must demonstrate that Davis and Distributors intended to insure Sales upon entering their processing agreement. The pleadings before the court do not establish this common intent. "It is also axiomatic that the court cannot reform and remake a contract for alleged mistake where there was never any such common intent. [Citations.]" (*Gillis v. Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408, 414 [47 Cal.Rptr. 868, 25 A.L.R.3d 564].)

■ This court refuses to disturb that which was written and agreed to by Davis and Distributors. The processing contract in this case, adopted by Travelers in preparing its additional coverage declaration for Davis, clearly manifests the parties' "single intention" to name only Distributors as an additional insured. Reformation is an equitable remedy. The addition of Sales to Travelers' policy would create a new and different contract, while perpetrating an inequity upon the respondent here.

The authorities cited by appellant to support its suit for reformation are easily distinguished from the case at bar. American refers to decisions where reformation was sought by a contracting party to the insurance agreement, a party to an antecedent agreement who was subsequently omitted from the applicable policy, a successor in interest or assignee of an original contracting party.[9] Standing may properly be

---

[9]See, e.g., *American Surety Co. of New York v. Heise* (1955) 136 Cal.App.2d 689 [289 P.2d 103] [sales contract for an automobile listed son as the "buyer"; necessary information for insurance policy was taken from the sales contract, but father was shown to be the car's sole owner and son was omitted from the policy]; *Watson v. Collins* (1962) 204 Cal.App.2d 27 [21 Cal.Rptr. 832] [interest obligation on real property purchase was variously described in sales contract and promissory note; parties included the grantees of the original purchasers, and the original purchasers as interveners]; *Modica v. Hartford Accident and Indemnity Co.* (1965) 236 Cal.App.2d 588 [46 Cal.Rptr. 158] [plaintiff seeking reformation was a party to the insurance contract]; *Gillis, supra,* 238 Cal.App.2d 408 [policy issued in the name of a nonexistent company; plaintiff was the assignee of the alleged insured, and sought reformation to correct the name of the insured party]; *Lighting Fixture & Elec. Sup. Co. v. Continental Ins. Co.* (5th Cir. 1969) 420 F.2d 1211 [executed lease agreement called for lessee to obtain a fire insurance policy, naming owner of the premises as a beneficiary; policy omitted owner, who thereafter sought reformation]; *Truck Insurance Exchange v. Wilshire Insurance Co.* (1970) 8 Cal.App.3d 553 [87 Cal.Rptr. 604] [plaintiff seeking reformation was a party to the insurance contract].

conferred in those instances, but American's posture is significantly different in this litigation.

Appellant's cause of action for reformation is contingent upon Sales' status in relation to the processing contract between Davis and Distributors. Sales not only fails to qualify as a party to either the insurance agreement or processing contract, but there also was no assignment of any contract right from Distributors to Sales indicated by the record. And the facts do not show that Sales succeeded to the interests of either Distributors or Davis as the purchaser of any contract right.

Sales' position with regard to the processing agreement is best illustrated by the contrast in two similar reformation cases. Appellant cites the decision in *Jackson* v. *Aetna Life & Casualty Co.* (1979) 93 Cal. App.3d 838 [155 Cal.Rptr. 905], where the court allowed an action for reformation by "an intended third party beneficiary" of an insurance contract (at pp. 847-848). In *Jackson*, a written lease agreement required the lessee to obtain liability insurance for the premises and name the lessor as a beneficiary. (*Id.* at p. 840.) The lessee's insurance contract did not comply with the underlying agreement, as the lessor was omitted as an insured. (*Id.* at pp. 846-847.) The court reformed the policy, naming the lessor as an insured. (*Id.* at p. 848.)

In contrast to *Jackson*, the case at bar more closely parallels the Ninth Circuit decision in *Continental Insurance Co. of New York* v. *Cotten, supra*, 427 F.2d 48. This action was removed from a California state court, and centers on the attempt of the record owners-lessors to reform a fire insurance policy after a house on the leased premises burned down. (*Id.* at pp. 50-51.) The lessee was the named insured, while the lessors were not covered in the policy. (*Ibid.*) The court of appeals denied reformation of the fire policy because there was no underlying agreement to insure the lessors. (*Id.* at pp. 52-53.) The Ninth Circuit concluded that without "an objective manifestation of mutual intent," there was no mutual agreement that a reformation could express. (*Id.* at p. 53.)

For the same reason the lessors were not added as insureds to the policy in *Continental Insurance Co.*, Sales is not to be named as an additional insured to the Travelers policy. There was no "objective manifestation of mutual intent" by Davis and Distributors to insure Sales. Furthermore, if Distributors erred in failing to negotiate coverage for Sales in the processing contract, this "unilateral mistake" does not authorize reformation here. The processing agreement, at a minimum,

evidences a "single intention" by Davis to insure only Distributors for property damage resulting from the processing activities.

The constructive notice of Distributors' corporate organization does not impute actual knowledge or suspicion of any alleged unilateral mistake by Distributors to Davis. (*La Mancha Development Corp.* v. *Sheegog* (1978) 78 Cal.App.3d 9, 16, 17 [144 Cal.Rptr. 59].) Davis contracted to maintain, wash, and repair automobiles for Distributors. The automobile processor entered into a written agreement with a corporation authorized to transact business in California. Notwithstanding Distributors' ownership and management, it was the only Toyota entity which Davis agreed to insure. Constructive notice of the subsidiary's purported mistake in failing to contract coverage for Sales is not a sufficient ground for reformation. (*Id.* at p. 16.)

American alleges that the alter ego doctrine dictates Distributors' entry into the processing contract for Sales' benefit. Appellant asserts that Sales' ownership of Distributors' stock, and the identity of their directors and officers, makes the wholly owned subsidiary a mere "instrumentality" of Sales. On the basis of the alter ego doctrine, American argues that Travelers' policy should be reformed to include Sales as an additional insured.

In *United States Fire Ins. Co.* v. *National Union Fire Ins. Co.* (1980) 107 Cal.App.3d 456, 469 [165 Cal.Rptr. 726], the court reiterated the well-established rule that the alter ego doctrine is not applied "'to eliminate the consequences of corporate operations,'" but it is utilized "'to avoid inequitable results.' [quoting *Aladdin Oil Corp.* v. *Perluss* (1964) 230 Cal.App.2d 603, 614 (41 Cal.Rptr. 239)]." The court declared that "alter ego" may not be applied "so as to prejudice the rights of an innocent third party who has dealt with the corporation as such." (*Ibid.*)

The corporate entity is disregarded to prevent fraud or an injustice, not to inflict an obligation on an innocent corporation. (*Meyer* v. *Glenmoor Homes, Inc.* (1966) 246 Cal.App.2d 242, 260-261 [54 Cal.Rptr. 786, 55 Cal.Rptr. 502]; see 6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 6, p. 4318.) The fraud or inequity sought to be eliminated must be that of the party against whom the alter ego doctrine is invoked, and "such party must have been an actor in the course of conduct constituting the 'abuse of corporate privilege' ..." (*United States Fire Ins. Co., supra*, 107 Cal.App.3d at p. 472, quoting from

*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 411 [93 Cal.Rptr. 338].) No such circumstances exist in this case.

American cannot appropriately apply the alter ego doctrine against respondent. Travelers was not a party to any inequitable conduct; it simply provided the coverage which Davis and Distributors bargained for. Even if the allegations support a finding of alter ego, the equitable doctrine may not be applied to rewrite Travelers' policy and add a party not intended to be insured.

The final measure of American's standing depends upon Sales' status as a third party beneficiary under Civil Code section 1559.[10] ■ The general principles of third party beneficiary law apply with equal force to Travelers' policy. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 33 [147 Cal.Rptr. 655].) As a result, if Sales is only an "incidental beneficiary" of respondent's policy, it has no grounds for recovery. (*Kenny* v. *Safeco Title Ins. Co.* (1980) 113 Cal.App.3d 557, 561 [169 Cal.Rptr. 808]; *Walters* v. *Marler, supra*, 83 Cal.App.3d at p. 33; *Fryer* v. *Kaiser Foundation Health Plan, Inc.* (1963) 221 Cal.App.2d 674, 679 [34 Cal.Rptr. 688].)

Unlike *Jackson, supra*, 93 Cal.App.3d 838, 840, the underlying agreement in this case did not disclose an intent to insure a party which was subsequently omitted from the insurance policy. The processing contract does not suggest any intent to insure Sales' interest in the leased premises. Sales is merely an incidental beneficiary which may fortuitously benefit from Davis' agreement to indemnify Distributors for property damage resulting from the processing activities. (*Kirst* v. *Silna* (1980) 103 Cal.App.3d 759, 763 [163 Cal.Rptr. 230].)

■ Generally, a policy of indemnity insurance will not inure to a third party's benefit unless the contract makes such an obligation express, and any doubt should be construed against such intent. (*Chamberlin* v. *City of Los Angeles* (1949) 92 Cal.App.2d 330, 332 [206 P.2d 661]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 502, p. 431.) The case at bar is no exception to this rule. Travelers' "Garage Liability Policy" embodied the antecedent expressions of the written processing agreement. In *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944 [132 Cal.Rptr. 424, 553 P.2d 584], the Supreme Court defined Sales' position with regard to respondent's poli-

---

[10]Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

cy: "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler."

As an incidental beneficiary, Sales cannot enforce any terms in the Travelers policy. (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841].) Since appellant is asserting whatever rights Sales may have in the policy, it is apparent that American lacks standing to seek the reformation of the insurance contract. ■ "The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant [citation]. Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained [citation]." (*Payne v. United California Bank* (1972) 23 Cal.App.3d 850, 859 [100 Cal.Rptr. 672].)

American's arguments for reformation are all foreclosed. An additional amendment to appellant's pleading will not confer the requisite standing to reform Travelers' policy and name Sales as an additional insured. ■ As this court decided in *Fireman's Fund Ins. Co. v. Security Pacific Nat. Bank.* (1978) 85 Cal.App.3d 797, 832 [149 Cal. Rptr. 883]: "Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the complaint that under applicable substantive law there is no reasonable possibility or probability that the defect can be cured by amendment. [Citation.]"

■ The trial court properly sustained Travelers' demurrer to the action for reformation without leave to amend. Since the terms of the instruments are consistent and clearly express the parties' intention, and there are no other facts pleaded, it is unnecessary to discuss many questions debated on appeal.

Appellant's cause of action for declaratory relief presents the two remaining issues in this matter. American seeks a declaration that respondent's duty to defend and indemnify Sales and Distributors in the pending tort actions is primary. Alternatively, appellant asserts that costs and any liability should at least be shared on a pro rata basis. Neither argument can be applied to Sales, and the record will not allow this court to declare the duties of the insurers to Distributors.

The same analysis which precludes reformation carries forward to deny any alleged duty owed by Travelers to Sales. Contrary to appellant's argument, respondent undertook to insure only Davis and Distributors. The facts in this case indicate that American is the insurer responsible for Sales' defense and indemnification. ▮ In *Ohio Cas. Ins. Co.* v. *Harbor Ins. Co.* (1968) 259 Cal.App.2d 207, 213 [66 Cal.Rptr. 340], the court held: "Coinsurance exists only when the insurable interest contemplated by both policies is identical, i.e., coverage by different insurers of the same insured and the same risk. (Ins. Code, § 590; 16 Couch on Insurance 2d, §§ 62:92, 62:94, 62:95 and 62:161.)"

Travelers is not a coinsurer of Sales, and has no obligation to defend that Toyota entity or share in American's defense expenditures. (*Ohio Cas., supra,* at p. 218.) The trial court's failure to render a corresponding declaration of the insurers' rights and duties may be a procedural lapse, but it is not reversible error. The judgment of dismissal on the count for reformation declared, in effect, American's obligation to defend and indemnify Sales. ▮ In *California Chiropractic Assn.* v. *Board of Administration* (1974) 40 Cal.App.3d 701, 704 [115 Cal. Rptr. 286], the court declared: "The practice of disposing of substantive issues raised in a complaint for declaratory relief by a judgment of dismissal is subject to criticism but has received sanction in cases where any declaration of the rights of the parties would necessarily be adverse to plaintiff and nonsuit or dismissal is the equivalent of an express declaration that a plaintiff had failed to establish any rights. In such cases the procedural error of the trial court does not require the reversal of a judgment. [Citations.]"

The insurers' duties to Distributors require definition. While American and Travelers are not coinsurers of Sales, the facts seem to indicate that both appellant and respondent cover Distributors for property damage arising from its operations. ▮ This court has held that the doctrine of equitable subrogation applies if both insurance carriers cover the same risk. (*Utica Mut. Ins. Co.* v. *Monarch Ins. Co.* (1967) 250 Cal.App.2d 538, 544 [58 Cal.Rptr. 639].) Travelers may have a duty to defend and indemnify Distributors, or share expenditures with American, in the Long Beach action for property damage. These facts alone, however, will not allow this court to determine the obligations of the parties on this appeal.

The relevant insurance policies are not included in full in the record here. Although the general principles of equitable subrogation may ap-

ply, the contractual commitment of each insurer to Distributors cannot be defined without the requisite policy language. For example, "where there is excess coverage, whether by virtue of an excess clause in one policy or otherwise, it is the primary insurer which is solely liable for the costs of defense if the judgment does not exceed primary coverage." (*Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 368 [165 Cal.Rptr. 799, 612 P.2d 889].)

This court will not offer an advisory opinion upon a hypothetical set of facts. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 723, p. 2344.) Although American and Travelers both insure Distributors, their respective obligations regarding the defense and indemnification of a property damage claim will not be declared here. Without knowledge of whether excess clauses or other limiting provisions appear in either policy, the parameters of the parties' duties cannot be specifically structured by this court. For this reason and because additional evidence is available, the case is remanded to the trial court for a limited rehearing on this particular issue.

The judgment of dismissal is affirmed, except for a remand to the trial court to declare the rights and duties of American and Travelers to defend Distributors and indemnify any pending loss. The trial court may enter a revised form of judgment consistent with the views and directions expressed in this opinion.

Affirmed with directions.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied August 21, 1981.