# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-50953

————

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2016

Lyle W. Cayce
Clerk

AIG SPECIALTY INSURANCE COMPANY, formerly known as Chartis Specialty Insurance Company,

Plaintiff - Appellee

v.

TESORO CORPORATION,

Defendant - Appellant

_____

TESORO CORPORATION, a Delaware Corporation; TESORO REFINING AND MARKETING COMPANY, L.L.C.,

Plaintiffs - Appellants

v.

AIG SPECIALTY INSURANCE COMPANY, formerly known as Chartis Specialty Insurance Company,

Defendant - Appellee

————————

Appeal from the United States District Court
for the Western District of Texas

————————

Before SMITH, HAYNES, and COSTA, Circuit Judges.

No. 15-50953

HAYNES, Circuit Judge:

Tesoro Corporation and Tesoro Refining & Marketing Company, LLC ("Tesoro Refining") (collectively, the "Tesoro Parties") appeal the summary judgment granted in favor of AIG Specialty Insurance Company, formerly known as Chartis Specialty Insurance Company ("Chartis"). We AFFIRM.

I.     Facts

The Golden Eagle Refinery in Martinez, California, has been subject to a prolonged series of federal and state environmental remediation orders. In 2000, Tosco Corporation ("Tosco") sold the refinery to Ultramar Diamond Shamrock ("Ultramar") and provided indemnity for $50 million of remediation costs to cover preexisting environmental issues. Ultramar, based in Texas, also purchased $100 million excess coverage from Chartis (the "Chartis policy") via an insurance broker, Marsh. Ultimately, Ultramar began negotiating with Tesoro Corporation and agreed to sell the refinery to Tesoro Refining. The purchase and sale agreement specified that Ultramar was to assign the Tosco indemnities, and to either secure an endorsement to the Chartis policy adding the new company as an additional insured or assign the Chartis policy directly.

This litigation concerns the transfer of the Chartis policy from Ultamar. Chartis did provide the transfer endorsement—but the endorsement named Tesoro Corporation as the new named insured. By contrast, Tesoro Refining, its subsidiary, was the actual purchaser of the refinery. Chartis contends that it acted upon instructions that listed only Tesoro Corporation as the named insured.[1] Indeed, Tesoro Corporation has a corporate practice of naming the

---

[1] The policy listed the "Named Insured" on the front page and defined "Insured" in the body of the policy as "the Named Insured, and any past or present director, officer, partner, or employee thereof, including a temporary or leased employee, while acting within the scope of his or her duties as such." This definition, then, did not include subsidiaries. Effective May 17, 2002, Chartis sent an endorsement changing the Named Insured to "Tesoro Petroleum Corporation" (now known as Tesoro Corporation) and adding Valero Energy Corporation as an additional insured. Tesoro Refining was not mentioned.

parent on insurance policies but takes the position in this litigation that both companies should have been insured. The Tesoro Parties further maintain that all of the parties to the deal shared a common understanding and intention that the policy should be written such that it covered Tesoro Refining.

Soon after the refinery transaction took place, Tesoro Refining sued Tosco for fraud contending that Tosco had concealed the severity of the environmental liabilities present at the refinery. Tosco argued that Tesoro Refining's decision to secure extensive excess insurance coverage showed that it had not detrimentally relied on Tosco's purportedly inaccurate representations regarding the environmental issues at the refinery. In response, Tesoro Refining argued that its insurance coverage could not defeat its fraud claim, and that, since Tosco had not paid the premium on the policies and was not itself a named insured, there was no basis for it to even raise the existence of the coverage.

The Tosco/Tesoro Refining dispute stretched from 2003 until 2007. As Tosco and Tesoro Refining drew near a settlement, Tesoro sent a letter to apprise Chartis of the progress of the litigation. Chartis responded with a reservation of rights letter that acknowledged the matter as a potential claim. That letter identified "Tesoro Petroleum Corporation" (Tesoro Corporation's prior name) as the named insured and stated that coverage would be provided only if the insured were legally obliged to pay for cleanup costs.

Tesoro Refining settled the Tosco litigation in March 2007, receiving $58.5 million from Tosco's successor, ConocoPhillips. In October 2009, Chartis received a formal demand for coverage in a letter written on "Tesoro Corporation" letterhead and identifying "Tesoro Petroleum Corporation" as the named insured. This letter indicated that Tesoro Refining was the buyer of the refinery and the party that owed cleanup liabilities. The Tesoro letter explained the conclusion of the Tosco litigation, outlined various expenditures

No. 15-50953

on environmental cleanup, and demanded that Chartis pay under the policy. Chartis acknowledged the demand and indicated that it would investigate the claims. That investigation proceeded slowly, and the parties eventually filed suit. The Tesoro Parties initially sued in California, with Chartis filing a declaratory judgment action in Texas. Both cases were later consolidated into one action in federal district court in San Antonio.

It was in this litigation that the matter of which entity was insured under the Chartis policy came to the fore, with Chartis contending that it owed coverage only to Tesoro Corporation. In 2012, the Tesoro Parties sought reformation and also sued for breach of contract on a "third-party beneficiary" claim under California law (assuming arguendo that Tesoro Refining was not a named or additional insured under the policy). The district court applied Texas law to the third-party beneficiary claim and concluded that it failed; alternatively, it concluded also that California law would not offer relief. In addition, the court concluded that the reformation claim was barred by the Texas four-year statute of limitations (and, in the alternative, the California three-year statute) because, at a minimum, the Tesoro Parties should have discovered the alleged mistake during the mid-2000's Tesoro/Tosco litigation. Thus, the action filed in 2012 was barred. Ultimately, the district court entered judgment in Chartis's favor, and the Tesoro Parties timely appealed.[2]

II.     Discussion

A summary judgment is reviewed de novo, applying the same standard on appeal that the district court applied. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine

---

[2] We have appellate jurisdiction under 28 U.S.C. § 1291, and the district court had diversity jurisdiction over the underlying case.

4

dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  The court is to view the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party, here the Tesoro Parties. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  We can affirm a summary judgment for any reason supported by the record and presented to the district court, even if the district court did not rely on that reason.  *See id.*

A.  Third-Party Beneficiary

The parties agree that Texas law does not recognize a third-party beneficiary claim that would permit Tesoro Refining to recover here.  The Tesoro Parties argue that California law governs and that it provides relief for Tesoro Refining.  Because the Tesoro Parties concede that they would not prevail under Texas law and therefore do not appeal the district court's resolution of that portion of the issue, we analyze only California law to see whether it sustains the claimed relief the Tesoro Parties seek.[3]

California, like most states, holds that a contract should be interpreted so as to "give effect to the mutual intention of the parties as it existed at the time of contracting . . . ."  CAL. CIV. CODE § 1636 (West).  Further, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."  CAL. CIV. CODE § 1639 (West); *see also, e.g.*, *Wolf v. Walt Disney Pictures & Television*, 76 Cal. Rptr. 3d 585, 601 (Cal. Ct. App. 2008) ("Ordinarily, the objective intent of the contracting parties is a

---

[3] The parties dispute which state's laws apply:  California or Texas.  We conclude that it is unnecessary to decide this question because (as discussed below), while the two states' laws are different, they do not result in a different outcome here.  *Baldwin v. Taishang Gypsum Co. Ltd. (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*, 742 F.3d 576, 586 (5th Cir. 2014) (explaining that a "false conflict" occurs when the application of the laws of either state in question "would produce the same decision in the lawsuit" (citation omitted)).

legal question determined solely by reference to the contract's terms."). California has a permissive approach to the use of extrinsic evidence in disputes over meaning. *See Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 469 (Cal. Ct. App. 2009). The Tesoro Parties thus argue that the district court should have followed the intent of the parties—(purportedly) that the owner of the refinery, whichever entity it was, was covered under the policy—rather than the actual words of the policy.

The district court disagreed, citing *Am. Home Ins. Co. v. Travelers Indem. Co.*, 175 Cal. Rptr. 826 (Cal. Ct. App. 1981). American Home Insurance Company ("American Home") wrote a property insurance policy for Toyota Motor Company, Toyota Motor Sales ("Sales"), and Toyota Motor Distributors ("Distributors") (the latter two were wholly-owned subsidiaries of the parent auto manufacturer). *Id.* at 827. Travelers insured Davis, a "California corporation which maintained and prepared Toyota automobiles for distribution . . . ." *Id.* at 828. Davis and Distributors contracted to have Davis process certain automobiles on Distributors' behalf. *Id.* Under the contract, Davis was supposed to maintain liability coverage for Distributors. *Id.* However, the policy it procured contained a critical error: the insured premises were described as those leased "to the named insured." *Id.* But, while *Davis* occupied the premises, *Sales* was the actual lessee. *Id.*

A fire on the premises resulted in substantial litigation targeted at Sales. *Id.* at 829. Travelers refused to defend Sales, because Sales was not the named insured on the policy. *Id.* American Home, Sales's general insurer, brought suit as Sales's subrogee against Travelers. *Id.* The court determined that in order to have standing to sue, American Home had to demonstrate that Sales was an intended third-party beneficiary of the policy. *Id.* at 831. The court held that Sales was not an intended third-party beneficiary, because nothing in the contract evinced any express intent to benefit third parties. *Id.* at 834–

35. Under California law, the court said, "a policy of indemnity insurance will not inure to a third party's benefit unless the contract makes such an obligation express, and any doubt should be construed against such intent." *Id.* at 834. There was nothing in the contract's language to show that Sales was intended to benefit from the contract, so Sales could not pursue reformation. *Id.* at 835.

The district court stated that the instant case was materially indistinguishable, and thus cited *American Home Insurance* for the proposition that, because the instant policy's language does not evince any intent to benefit a third party (Tesoro Refining or otherwise), Tesoro Refining cannot assert third-party beneficiary status. We agree and affirm the district court's summary judgment on the breach of contract claim premised upon a third-party beneficiary argument.

B. Reformation

The district court granted summary judgment on the Tesoro Parties' reformation claim on limitations. The parties agree that Texas law governs this issue. Texas applies a four-year statute of limitations to reformation claims. *Harbor Ins. Co. v. Urban Const. Co.*, 990 F.2d 195, 200 (5th Cir. 1993); TEX. CIV. PRAC. & REM. CODE § 16.051. The Tesoro Parties argue that limitations did not begin to run until they discovered the alleged mistake[4] in the policy.

It has long been the law in Texas that receipt of a policy containing a mistake does not bar a later claim for reformation if the insured offers proof

---

[4] The identification of the precise "mistake" in the policy has been something of a moving target. The Tesoro Parties have at times argued that the identity of the named insured is the "mistake" but have conceded that Tesoro corporate practice is to list the parent as the named insured. The Tesoro Parties further conceded that Tesoro Corporation gains some benefit from the policy such as if it is held liable for environmental liabilities under a veil-piercing, respondeat superior, or similar theory. At oral argument, counsel for the Tesoro Parties explained that the "mistake" is the Tesoro Parties' belief that Tesoro Refining was also covered under the policy. Both "mistakes" are obvious from the face of the policy.

"that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it.'" *Fireman's Fund Indem. Co. v. Boyle Gen. Tire Co.*, 392 S.W.2d 352, 355 (Tex. 1965) (quoting *Del. Ins. Co. v. Hill*, 127 S.W. 283, 286–87 (Tex. Civ. App.—El Paso 1910, writ denied); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976). *Taylor* and *Boyle* both address the merits of an insured's claim for reformation and hold that receipt of a policy without protest is not an absolute bar to a reformation claim. 544 S.W.2d at 118–19; 392 S.W.2d at 354–55. In other words, an insured is not deemed to have accepted the terms of a policy simply by receiving it without argument.

This merits inquiry is distinct from the statute of limitations inquiry: whether the four year statute of limitations runs from the time the injury occurred—according to the well-settled "legal injury rule," *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997) —or whether, through application of the discovery rule, it runs from the date "the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 675 (5th Cir. 2013) (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). Early cases suggested that the discovery rule applies to toll accrual of the cause of action for reformation. *See Harbor Ins. Co.*, 990 F.2d at 200 (concluding that the discovery rule did not apply because the insured had actual knowledge of his claim).

On the merits, the Tesoro Parties argue that they relied upon the "specialized knowledge" of Chartis. To benefit from the "reliance on knowledge" prong of the *Taylor/Boyle* line of cases, they must argue that they relied upon Chartis to determine that the correct owner of the refinery was a separate entity other than the named insured (Tesoro Corporation) Chartis was told to list. This argument makes little sense, as Chartis was hardly in a

superior position to know which entity purchased the refinery, i.e., which entity was likely to be most directly liable for any environmental problems.

The Tesoro Parties have not directed this court to any evidence that they relied on Chartis to know that Tesoro Refining *actually owned* the refinery in question and to therefore draft the policy to include Tesoro Refining as an additional insured (i.e., a policy that covered both Tesoro Corporation and a separate entity, Tesoro Refining).  Pressed at oral argument to identify any such evidence, counsel for the Tesoro Parties failed to direct the court to any record evidence that could support the conclusion that they relied on Chartis to include the correct name in the insurance policy.  Thus, even if there is evidence buried somewhere in the various transmissions from 2002 that mentioned "Tesoro Refining," there is no basis for the Tesoro Parties to argue that they were relying upon Chartis to ferret out that fact.  *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("Rule 56 does not impose upon the district court or the court of appeals a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998))).

We conclude that the Tesoro Parties did not raised a genuine issue of material fact issue as to the "reliance on knowledge" prong.  They also point to no evidence of the "put it away without examination" prong.  Thus, their argument fails on the merits.

However, even if we assume arguendo that their claim is not barred on the merits for the Tesoro Parties' failure to question the policy when they received it, the claim was nonetheless filed too late.  The Tesoro Parties sued for reformation many more than four years after the 2002 "mistake" was made.  Thus, the parties argue over the application of the discovery rule here.  The Tesoro Parties rely upon decades-old caselaw to support their arguments about the discovery rule.  This reliance is unwarranted in light of developments in

No. 15-50953

Texas law regarding the discovery rule's application that began in 1996. The Texas Supreme Court's holdings in *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996),[5] and *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996), explained that the discovery rule applies only where "the nature of the injury [is] inherently undiscoverable and . . . the injury itself [is] objectively verifiable. . . . [A]pplicability of the discovery rule is determined categorically." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (citing *Altai*, 918 S.W.2d at 456).

The Tesoro Parties were unable to point to any basis for concluding that the injury in this case—the alleged mistake over which entity was covered—is "inherently undiscoverable." Indeed, the mistake is evident from the face of the document. Texas cases since 1996 have determined the discovery rule does not apply to delay the accrual of the cause of action in such situations.[6] Accordingly, the Tesoro Parties' reformation claim is time-barred.

AFFIRMED.

---

[5] *Altai* addressed misappropriation of trade secrets. The Texas legislature later added a specific discovery rule for misappropriation of trade secrets, but it did nothing to alter the general rule (since followed in many different cases) announced in *Altai* for claims without a statutory discovery rule. TEX. CIV. PRAC. & REM. CODE §16.010(a).

[6] *See, e.g.*, *Cosgrove v. Cade*, 468 S.W.3d 32, 36–37 (Tex. 2015) (holding that the discovery rule does not apply to a reformation claim based upon plainly obvious and material omissions in an unambiguous deed, because such mistakes are not inherently undiscoverable); *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313–15 (Tex. 2006) (concluding that the discovery rule was inapplicable to a breach of contract claim premised on the failure by a vendor to add the plaintiff as an additional insured on the vendor's policy); *see also Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 698–99 (S.D. Tex. 2001) ("Plaintiffs do not raise a genuine issue of fact as to whether Guardian's alleged misrepresentations are inherently undiscoverable."), *aff'd*, No. 01-21294, 2003 WL 21418107, at *1 (5th Cir. 2003) (unpublished) (concluding that discovery rule was not available in a case involving insurance because the alleged wrongdoing was not "otherwise undiscoverable").